**Frank BARRECA and The Factory, L.L.C., A Limited Liability Company, Appellants,**

v.

**George T. NICKOLAS and The City of Davenport, Appellees.**

**No. 03–0439.**

Supreme Court of Iowa.

June 16, 2004.

James D. Bruhn of Farwell & Bruhn, Clinton, for appellants.

Brian Heyer, Assistant City Attorney, Davenport, for appellees.

STREIT, Justice.

While presiding at a public meeting, a Davenport alderman repeated an anonymous informant's false allegation that illicit and nefarious activities—involving minors, thongs, and water—were afoot at a local teen dance club. The club and one of its owners sued for defamation and intentional infliction of emotional distress. The district court dismissed both claims on summary judgment.

We reverse the grant of summary judgment on the defamation claim because there is a genuine issue of material fact as to whether the alderman abused his qualified privilege. We affirm dismissal of the intentional infliction of emotional distress claim, however, because the plaintiffs have not shown they suffered severe or extreme emotional distress.

## I. Facts and Prior Proceedings

On July 30, 2001, George Nickolas, a Davenport alderman, presided as mayor pro tem at a Committee of the Whole meeting of the Davenport City Council. At this public meeting, Nickolas stated:

> I got a call from a lady who was concerned about teenage thong contests and wet underwear contests they ran and wet t-shirt contests being held at what is supposed to be an all-age nightclub called "The Factory," and she was looking for [it] at least being brought up on the floor. She couldn't give a name, fortunately I taped it and played it for the Police Department and I'm not sure what they are doing, but they indicated they would look into it. If anybody has

any other leads on this matter, they certainly can turn it over .... Major Schaeffer here will be the point of contact if anyone has any other leads—this lady was very upset ... that teenage girls were being encouraged to wear skimpy bathing suits and participate in whatever contest they had and that young boys were encouraged to strip down to their underwear and perform ... I don't know what, and also that they had wet t-shirt contests. Now that is something that adult establishments— some places do, but if we're encouraging our minor youths to do this, then there needs to be somebody to look into it and see whatever action might be taken.

Nickolas's statement was broadcast numerous times on local television and radio. Nickolas also played a tape of the anonymous phone call to local media outlets.

Nickolas had not attempted to contact Frank Barreca, one of the owners and the general manager of The Factory, before repeating the allegations. Barreca first learned of the anonymous phone call while watching the evening news. The next day Nickolas admitted on local television the allegations were false. Barreca claims that after the false allegations were aired, The Factory suffered a decline in business and closed. Barreca also alleges he personally suffered "a great deal of humiliation, embarrassment, stress, and loss of sleep."

Barreca and The Factory sued Nickolas and the City of Davenport for slander and intentional infliction of emotional distress.[1] The plaintiffs' claim against the City was based upon the theory Nickolas was acting within the scope of his duties and responsibilities as an alderman.

The district court granted summary judgment for the defendants on both claims. The court held Nickolas's statement was qualifiedly privileged, because he was only "attempting to seek information about an issue that would affect the community" and did not harbor any ill-will towards the defendants. *See Vinson v. Linn–Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 117 (Iowa 1984) (qualified privilege defeated upon a showing the defendant acted with "actual malice," i.e., with "ill-will or wrongful motive"). With respect to the intentional infliction of emotional distress claim, the district court held the plaintiffs had not proven (1) Nickolas's statement was sufficiently "outrageous" or (2) severe or extreme emotional distress.

On appeal, the plaintiffs argue the district court erred in granting summary judgment on the slander claim, because (1) the defendants were not entitled to a qualified privilege; (2) even if the defendants were entitled to a qualified privilege, in determining whether the defendants had abused the privilege the court incorrectly defined "actual malice" as wrongful motive, as opposed to a knowing or reckless disregard for the truth; and (3) even if actual malice is defined as wrongful motive, there is sufficient evidence to show Nickolas harbored ill-will towards the plaintiffs. The plaintiffs likewise contend the district court erroneously dismissed the intentional infliction of emotional distress claim because there is sufficient evidence to show (1) Nickolas's conduct was outrageous and (2) Barreca suffered severe or extreme emotional distress.

## II. Standard of Review

 As we recently stated in *Delaney v. International Union UAW Local No.*

---

1. The plaintiffs also sued the Davenport City Council and EBI Video, Incorporated (operator of Fox 18, a local television station that reported Nickolas's statement). These two parties were later dismissed.

*94,* appellate review of an entry for summary judgment is well-settled:

> We, like the district court, are obliged to view the factual record in the light most favorable to the resisting party, affording that party all reasonable inferences that the record will bear. Summary judgment is proper only if the record made shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. If the conflict in the record concerns only the legal consequences flowing from undisputed facts, entry of summary judgment is proper. . . . Our review, therefore, is for the correction of errors at law.

675 N.W.2d 832, 834 (Iowa 2004) (quoting *Garofalo v. Lambda Chi Alpha Fraternity,* 616 N.W.2d 647, 649–50 (Iowa 2000)); *see also Jones v. Palmer Communications, Inc.,* 440 N.W.2d 884, 889 (Iowa 1989) (explaining unique role of summary judgment in defamation cases), *overruled on other grounds by Schlegel v. Ottumwa Courier,* 585 N.W.2d 217, 224 (Iowa 1998).

### III. Merits

#### A. Defamation

■■■ The law of defamation is composed of the twin torts of libel and slander. *Huegerich v. IBP, Inc.,* 547 N.W.2d 216, 221 (Iowa 1996). "The gist of an action for libel or slander is the publication of written or oral statements which tend to injure a person's reputation and good name." *Lara v. Thomas,* 512 N.W.2d 777, 785 (Iowa 1994). At issue in this appeal is slander. *See* Restatement (Second) of Torts § 568 (1977) (slander defined generally as "the publication of defamatory matter by spoken words . . .") [hereinafter Restatement].

At common law, slander was generally not actionable unless the plaintiff proved actual damage. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 112, at 788 (5th ed.1984) [hereinafter *Prosser on Torts* ]. Exceptions to the rule developed, however: certain statements, characterized as "slander per se," did not require proof of special harm or any other damage to reputation. *Vinson,* 360 N.W.2d at 116. In such cases, "proof of the defamation itself is considered to establish the existence of some damages, and the jury is permitted, without other evidence, to estimate their amount." *Prosser on Torts* § 112, at 788.

Over the years, we have characterized a variety of statements as slander per se. *See, e.g., Shultz v. Shultz,* 224 Iowa 205, 211, 275 N.W. 562, 565 (1937) (imputation of loathsome disease); *Arnold v. Lutz,* 141 Iowa 596, 598, 120 N.W. 121, 121 (1909) (adultery); *Haynes v. Ritchey,* 30 Iowa 76, 77 (1870) (bestiality); *see Hicks v. Walker*; 2 Greene 440, 442 (Iowa 1850) (theft). *See generally* Patrick J. McNulty, *The Law of Defamation: A Primer for the Iowa Practitioner,* 44 Drake L.Rev. 639, 650–52 (1996) (cataloguing Iowa slander per se cases, which the author suggests fall into four general categories: imputation of (1) certain indictable crimes, (2) loathsome disease, (3) incompetence in occupation, and (4) unchastity) [hereinafter McNulty]; *cf. Prosser on Torts* § 112, at 788–93 (recognizing same four categories in other jurisdictions). In the case at bar, the district court treated Nickolas's statements about illicit behavior at The Factory as slander per se. *See Lara,* 512 N.W.2d at 785 (recognizing "[s]landerous imputations affecting a person in his or her business, trade, profession, or office" as slander per se); Restatement § 573 (same). Neither party challenges this characterization on appeal.

■■■ The defendants asserted a qualified privilege as an affirmative defense to the plaintiffs' slander per se claim. *See*

*Mills v. Denny*, 245 Iowa 584, 586, 63 N.W.2d 222, 224 (1954) ("Privileged communications are divided into two main general classes, namely: (1) those that are absolutely privileged, and those that are qualifiedly or conditionally privileged."). The law affords defendants privileges because

> [s]ometimes one is justified in communicating to others, without liability, defamatory information.... The law recognizes certain situations may arise in which a person, in order to protect his own interests or the interests of others, must make statements about another which are indeed libelous. When this happens, the statement is said to be privileged, which simply means no liability attaches to its publication.

*Vojak v. Jensen*, 161 N.W.2d 100, 105 (Iowa 1968); *see Mills*, 245 Iowa at 587, 63 N.W.2d at 224 ("The doctrine of privileged communication is based upon the principle of good public policy.... It rests upon the same basis of necessity that is found in other tort laws. Instances abound where the individual must surrender his personal rights and suffer loss for the benefit of the common welfare.").[2] A qualified privilege is a defeasible immunity from liability; that is, a qualified privilege may be defeated under certain circumstances. *See Vojak*, 161 N.W.2d at 105. A qualified privilege is lost when it is abused. *Jones*, 440 N.W.2d at 892. For example, abuse occurs when a defamatory statement is published with "actual malice." *See Vojak*, 161 N.W.2d at 105.

As a threshold matter, the district court ruled the defendants were entitled to a qualified privilege because Nickolas was simply trying "to seek information about an issue that would affect the community.... " The court then held, as a matter of law, that Nickolas did not abuse his qualified privilege because he acted in good faith and without actual malice, i.e., there was no evidence he harbored any ill-will towards the plaintiffs.

On appeal, the plaintiffs make two assignments of error. First, they claim the court erred in ruling the defendants were entitled to a qualified privilege. Much of the dispute centers around whether Nickolas's actions satisfy one of the five so-called "elements" of a qualified privilege, "good faith." The plaintiffs point out Nickolas did not investigate the allegations before repeating them, and, in any event, did not publish the statements on a proper occasion, in a proper manner, and only to proper parties. The plaintiffs also assert the district court applied the wrong definition of "actual malice." The plaintiffs contend the proper standard is not wrongful motive, but a knowing or reckless disregard for the truth.

The arguments of the parties reveal substantial ambiguities in our precedents. This ambiguity has generated confusion among courts which have attempted to apply our doctrine of qualified privilege. *See, e.g., Mercer v. City of Cedar Rapids*, 308 F.3d 840, 849 (8th Cir.2002) (remark-

---

**2.** Historically, the privilege acted as a counterweight to the strict liability which befell defendants in defamation actions at common law. *See* McNulty, 44 Drake L.Rev. at 718. After *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and its progeny, which have imposed a fault requirement in many defamation cases as a matter of federal constitutional law, a number of commentators have questioned the contin-

ued need for qualified privileges. *See, e.g., Prosser on Torts* § 115, at 825 (where a jurisdiction has required negligence as a prerequisite to recovery in all cases, "it would seem that most qualified privileges could be abrogated" because "[m]ost private interests would be adequately protected without the necessity for a recognition of a qualified privilege").

ing that "the Supreme Court of Iowa seemed to merge" two distinct definitions of "actual malice"). We therefore address the issues in this case in considerable detail.

### 1. Qualified Privilege

In recent years, we have sometimes characterized qualified privilege doctrine as follows:

A qualified privilege exists with respect to statements that are otherwise defamatory if the following elements exist: (1) the statement was made in good faith; (2) the defendant had an interest to uphold; (3) the scope of the statement was limited to the identified interest; and (4) the statement was published on a proper occasion, in a proper manner, and to proper parties only.

*Winckel v. Von Maur, Inc.,* 652 N.W.2d 453, 458 (Iowa 2002); *see Theisen v. Covenant Med. Ctr., Inc.,* 636 N.W.2d 74, 83–84 (Iowa 2001) (same).[3] The essence of the qualified privilege claimed by the defendants in this case is that Alderman Nickolas was simply requesting information from the public about an anonymous complainant's charges, which, if substantiated, would implicate an important community interest. *Cf.* Restatement §§ 595, 598 (providing qualified privilege for communications made for the protection of the interest of the recipient or a third person, and to one who may act in the public interest, respectively). The parties dispute whether Nickolas's statement was made in good faith, published on a proper occasion, in a proper manner, and only to proper parties.

■ Although the parties continue to frame the issue in this way, we do not. *See Kuwik v. Starmark Star Mktg. & Ad-*

*min., Inc.,* 156 Ill.2d 16, 188 Ill.Dec. 765, 619 N.E.2d 129, 134–35 (1993) (adopting Restatement approach). Our task is simply to determine whether the occasion of Nickolas's statement was qualifiedly privileged; if the occasion was so privileged, it must then be determined whether that privilege was abused. *See* Restatement § 593. Generally, the former question is for the judge; the latter for the jury. *See Children v. Shinn,* 168 Iowa 531, 549, 150 N.W. 864, 869 (1915) ("It was for the court to say whether or not the occasion was privileged, but as the privilege was a qualified one, it was for the jury to say under proper instructions whether or not the defendant abused his privilege.") A qualified privilege is abused, for example, when a defamatory statement is published with "actual malice." *See Vojak,* 161 N.W.2d at 105.

■ Surveying our precedents, we find that members of subordinate legislative bodies, including city councils, are entitled to a qualified privilege for statements made in the performance of their official duties "upon any subject matter pertinent and relevant" to the occasion. *See Cowman v. LaVine,* 234 N.W.2d 114, 124–25 (Iowa 1975) (city council member entitled to qualified privilege for statements made about police chief's criminal history, during discussion at council meeting about the auxiliary police department; "qualified privilege is adequate to protect public officials who in good faith make bona fide statements upon any subject matter pertinent and relevant to the question on the privileged occasion"); *Mills,* 245 Iowa at 593, 63 N.W.2d at 227 (for same reasons, qualified privilege available to the mayor of Des Moines, who allegedly slandered a

---

**3.** It appears this characterization finds its genesis in a case handed down four decades ago, in a passage quoted from a leading ency-

clopedia. *See Vojak v. Jensen,* 161 N.W.2d 100, 105 (Iowa 1968) (quoting 33 Am.Jur. *Libel & Slander* § 126, at 124 (1941)).

lawyer during meeting of city council); *see also* McNulty, 44 Drake L.Rev. at 658 (local legislators entitled to a qualified privilege; privilege conditionally extends to "statements made in the performance of their official duties"). *But see* Restatement § 590 cmt. c (under the majority rule, members of local legislative bodies are afforded an absolute privilege). Responding to a complaint about alleged indecent and illegal conduct at a local business in his capacity as a local legislative official, Alderman Nickolas is entitled to a qualified privilege for his statements about The Factory at the Committee of the Whole meeting of the Davenport City Council.[4]

Having determined the district court correctly held the occasion was qualifiedly privileged, we now turn to examine whether the court properly decided Nickolas did not abuse his privilege.

## 2. What Constitutes "Actual Malice" to Defeat a Qualified Privilege

■ Although the question of whether a qualified privilege is abused is ordinarily a matter for the jury, in this case the district court ruled, as a matter of law, that Nickolas had not abused the privilege. As a consequence, the district court dismissed the plaintiffs' defamation action.

The arguments of the parties on this issue largely center upon whether Nickolas's statements were made with "actual malice." The defendants assert that a showing of actual malice to defeat their qualified privilege requires proof Nickolas acted with ill-will or wrongful motive. The district court adopted this definition of actual malice, and dismissed the plaintiffs'

defamation claim because there was no evidence in the record to support a finding of wrongful motive. The plaintiffs, on the other hand, contend the correct definition of "actual malice" in this context is "a knowing or reckless disregard for the truth."

Unfortunately, support for both definitions can be found in our precedents. The defendants cite *Winckel*, in which we defined "actual malice" as "ill-will, hatred or desire to do another harm." 652 N.W.2d at 459 (citations omitted). Such is the old common law "wrongful motive" definition of actual malice, which we have long but somewhat inconsistently applied to determine whether a defendant has abused a qualified privilege. *See, e.g., Caveman Adventures UN, Ltd. v. Press–Citizen Co.*, 633 N.W.2d 757, 761 (Iowa 2001); *Marks v. Estate of Hartgerink*, 528 N.W.2d 539, 546 (Iowa 1995); *Robert's River Rides, Inc. v. Steamboat Dev. Corp.*, 520 N.W.2d 294, 304 (Iowa 1994); *Haldeman v. Total Petroleum, Inc.*, 376 N.W.2d 98, 103–04 (Iowa 1985); *Salinger v. Cowles*, 195 Iowa 873, 890, 191 N.W. 167, 174 (1922); *Cherry v. Des Moines Leader*, 114 Iowa 298, 300, 86 N.W. 323, 323 (1901). *See generally* McNulty, 44 Drake L.Rev. at 666 (cataloguing various manifestations of common law definition of "actual malice" in Iowa, and concluding "a publication otherwise conditionally privileged will remain so if the defendant publishes the statement for the honest purpose of furthering the underlying interest; if, however, the communication is published to satisfy other motives or purposes, most often to gratify a feeling of ill-will or personal spite toward the plaintiff, it will not be protected").[5]

---

4. In order to sustain their claims against the City, the plaintiffs in their petition alleged "[a]t all times relevant hereto, George Nickolas was acting within the scope of his duties and responsibilities as alderman for the City of Davenport."

5. Although wrongful motive appeared to remain the ultimate inquiry, the following pas-

The plaintiffs, on the other hand, cite our decision in *Taggart v. Drake University,* in which we stated "[a]ctual malice [also] occurs when a statement is made with knowledge that it is false or with reckless disregard for its truth or falsity." 549 N.W.2d 796, 804 (Iowa 1996) (citations omitted). This is the definition of "actual malice" developed by the United States Supreme Court in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and its progeny; unlike the common law definition of actual malice, *New York Times* actual malice focuses upon the attitudes of defendants vis-à-vis the truth of their statements, as opposed to their attitudes towards plaintiffs. *Price v. Viking Penguin, Inc.,* 881 F.2d 1426, 1433 (8th Cir.1989); 1 Robert D. Sack, *Sack on Defamation* § 9.3.2, at 9–39 (3d ed.1999). A plaintiff must prove *New York Times* actual malice in cases involving special federal constitutional restraints upon defamation law, irrespective of whether the defendant asserts a qualified privilege. *See Caveman Adventures,* 633 N.W.2d at 761–62 (discussing difference between the two definitions of actual malice). *See generally* 2 Dan B. Dobbs, *The Law of Torts* §§ 417–20, at 1169–87 (2001) (explaining development of constitutional restraints upon defamation law) [hereinafter Dobbs]. Because *Taggart* was not decided upon First Amendment grounds, reference to the *New York Times* definition of actual malice in *Taggart* was improper. McNulty, 44 Drake L.Rev. at 717 n. 752 (*Taggart* involved a "misapplication" of the *New York Times* actual malice test); *see Mercer,* 308 F.3d at 849 ("the Supreme Court of Iowa seemed to merge the two tests when it stated that actual malice defeating the qualified privilege defense 'occurs when a statement is made with knowledge that it is false or with reckless disregard for its truth or falsity' " (quoting *Taggart,* 549 N.W.2d at 804)); *see also Herbert v. Lando,* 441 U.S. 153, 199, 99 S.Ct. 1635, 1660–61, 60 L.Ed.2d 115, 148 (1979) (Stewart, J., dissenting) ("Although I joined the Court's opinion in *New York Times,* I have come greatly to regret the use in that opinion of the phrase "actual malice".... In common understanding, malice means ill will or hostility...."). Because the parties in the case at bar likewise do not assert that the federal constitution requires the plaintiffs to prove *New York Times* malice, i.e., a knowing or reckless disregard of the truth, the plaintiffs' reliance upon this language in *Taggart* is, strictly speaking, misplaced.[6]

sage from an early case illustrates the various considerations which were sometimes deemed to be relevant:

> A [defendant] who knowingly makes a false charge cannot take advantage of a [qualified] privilege, and, if he had no reasonable cause for believing the statement to be true, it would amount in legal contemplation to a wanton statement or a statement made without knowing or caring whether it was true or malicious, and such reckless disregard of the rights of others is considered in law as malicious as deliberate falsehood .... [I]f the defendant had no probable cause for believing the publication to be true, that fact would tend to prove that he was actuated by malice, and would warrant the conclusion that there was malice in the publication.

*Thompson v. Rake,* 140 Iowa 232, 234–35, 118 N.W. 279, 280 (1908); *see also Ott v. Murphy,* 160 Iowa 730, 741–42, 141 N.W. 463, 468 (Iowa 1913); *accord Vojak v. Jensen,* 161 N.W.2d 100, 107 (Iowa 1968) ("Actual malice *is* defined as ill-will, hatred or desire to do another harm. It may also result from a reckless or wanton disregard of the rights of others."). As we shall see, some of these considerations anticipated the *New York Times* definition of actual malice.

6. The district court ruled, and neither party appears to challenge, that the plaintiffs in this case are not public figures. *See New York Times v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 706 (1964) (showing of knowing or reckless disregard must be made where plaintiff is a public fig-

With the issue of which definition to apply now squarely before us, however, a review of the current state of the law in this area reveals there is merit in the plaintiffs' claim as a matter of evolving common law doctrine. For the reasons which we will now explain, we discard the old common law wrongful motive standard, and adopt—by analogy—the *New York Times* "knowing or reckless disregard" definition of "actual malice" as the standard to be applied to determine whether a defendant has abused a qualified privilege. *Cf. Delaney*, 675 N.W.2d at 840 (recognizing Supreme Court adopted *New York Times* test by analogy—as opposed to constitutional compulsion—in balancing the interests in free speech afforded by the National Labor Relations Act in labor disputes against the reputational interests of the defamed).

■ As one noted commentator has observed, "[i]n several cases the influence of the Supreme Court decisions on constitutional privilege has had its effect [upon the common law], and it has been held that there is '[actual] malice' only if the publication is known to be false, or is in reckless disregard of the truth." *Prosser on Torts* § 115, at 835 n. 23. The highest courts of a number of jurisdictions have held that a knowing or reckless disregard for the truth on the part of the defendant—and not wrongful motive—must be shown to defeat a qualified privilege. *See, e.g., Marchesi v. Franchino*, 283 Md. 131, 387 A.2d 1129, 1133–34 (1978); *Rice v. Hodapp*, 919 S.W.2d 240, 244 (Mo.1996); *Dun & Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896, 900–01 (Tex.1970); *Bender v. City of Seattle*, 99 Wash.2d 582, 664 P.2d 492, 504–05 (1983); *see also Smock v. Nolan*, 361 F.3d 367, 372 (7th Cir.2004) (applying Illinois law); *Rockwood Bank v. Gaia*, 170 F.3d 833, 840 (8th Cir.1999) (applying Missouri law); *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 313 (5th Cir.1995) (applying Texas law); *De Leon v. Saint Joseph Hosp., Inc.*, 871 F.2d 1229, 1238 (4th Cir.1989) (applying Maryland law).[7] We follow these courts: to defeat a qualified privilege, a plaintiff must prove the defendant acted with knowing or reckless disregard of the truth of the statement.

■ Critics of the old common law test have pointed out that it no longer makes sense to base the defeasibility of qualified privileges on an inquiry into the motives of the publisher. In the post-*New York Times* era,

---

ure). Nor do the defendants claim Nickolas's comments regard a matter of "public concern" in the constitutional sense. *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 766–767, 105 S.Ct. 2939, 2949, 86 L.Ed.2d 593, 607 (1985) (White, J., concurring) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789, 809–10 (1974)) (In order to recover, private plaintiffs in matters of public concern "could no longer recover by proving a false statement, no matter how damaging it might be to reputation. They must, in addition, prove some 'fault,' at least negligence."); *see also Jones v. Palmer Communications, Inc.*, 440 N.W.2d 884, 898 (Iowa 1989) (adopting negligence standard).

7. Other jurisdictions, as well as the authors of the Restatement, have decided to also retain the wrongful motive test as a defeasibility standard. *See, e.g., Cole v. Chandler*, 752 A.2d 1189, 1194 (Me.2000) (qualified privilege defeated if defamer "knows his statement to be false, recklessly disregards its truth or falsity, or acts with spite or ill-will"); *Kass v. Great Coastal Express, Inc.*, 152 N.J. 353, 704 A.2d 1293, 1294–95 (1998); *see also Glenn K. Jackson, Inc., v. Roe*, 273 F.3d 1192, 1202 (9th Cir.2001) (applying California law); *Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 62 (2d Cir.1993) (applying New York law); Restatement (second) of Torts §§ 600, 603 (1977). In these jurisdictions, proof of either wrongful motive or a knowing or reckless disregard for the truth will defeat a qualified privilege.

[t]he law of defamation will evolve much more coherently if ill-will malice is discarded altogether, and the knowing or reckless disregard of the truth standard is used for all conditional privileges.... There are at least two grounds to support this unified standard. First, because the purpose of a common law privilege is to protect speech that furthers interests to which the law attaches special importance, it should not matter whether the speaker acts out of ill will if the speech furthers those interests, as long as the speaker does not know the statements are false, and does not recklessly disregard indications of their falsity.... The second reason for unifying constitutional and common law malice standards is simplicity. Constitutional and common law privileges often coexist in the same case, and the existence of more than one definition of malice can only bewilder juries (and possibly the judges and lawyers who try to explain the differences to them). Rather than maintain diverging standards in the part-constitutional, part-common law field of defamation, one comprehensive standard should be established whenever possible, so that neither plaintiffs nor defendants can unfairly exploit ambiguity and confusion. Requiring the plaintiff to allege and prove actual malice—knowing or reckless disregard for the truth of the statement—in cases protected by conditional privileges would both restore the hierarchy of specially protected types of speech that the common law has traditionally recognized and help to clear up the confusion in defamation law by the adoption of a unified standard for the rebuttal of both constitutional and common law conditional privileges.

Rodney A. Smolla, *Let the Author Beware: The Rejuvenation of the American Law of Libel,* 132 U. Pa. L.Rev. 1, 78–81 (1983)

[hereinafter Smolla]; John J. Watkins & Charles W. Schwartz, *Gertz and the Common Law of Defamation: Of Fault, Nonmedia Defendants, and Conditional Privileges,* 15 Tex. Tech. L.Rev. 823, 882–883 (1984) (abandoning common law definition of actual malice "avoid[s] potential problems of a jury blending fault and motivational concepts ...."); *cf.* McNulty, 44 Drake L.Rev. at 718 (because "[e]vidence of the attitude of a defendant toward a plaintiff, without more, would allow juries the freedom to punish unpopular speech and unpopular defendants, consequently deterring freedom of speech ... improper purpose ... should not be employed as a substantive and dispositive legal standard").

The old common law "improper motive" test is also anachronistic. In early cases of slander, "the purpose of courts was to punish sinful states of mind" or to punish political enemies. Dobbs § 416, at 1167. As a result, it made sense to adopt a system under which "a publisher could be liable even if he believed reasonably that he was publishing the truth and even if he published under a privilege, since his personal animus would destroy the privilege." *Id.* Because such justifications are no longer persuasive, the old common law "wrongful motive" definition of actual malice is a vestigial relic which must be abolished. *See* Oliver Wendell Holmes, Jr., *The Path of the Law,* 10 Harv. L.Rev. 457, 469 (1897) ("It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past."). We remain mindful of the importance of stare decisis as a force of stability and predictability in the law. Where persuasive reasons no longer support a discrete common law rule, how-

ever, we are not required to fetter ourselves to that rule simply for the sake of preserving past decisions. *See Shook v. Crabb,* 281 N.W.2d 616, 617 (Iowa 1979) ("An appellate court would be remiss in its duties if it did not from time to time reexamine the analysis underlying its precedents."); *see also State v. Liddell,* 672 N.W.2d 805, 813 (Iowa 2003). Thankfully, the common law in Iowa is not the common law of ancient England: times change, and the law must evolve to meet the demands of the present day. In sum, we abandon the old common law "improper purpose" definition of "actual malice" in favor of the *New York Times* test, which focuses upon whether the defendant published the statement with a knowing or reckless disregard of its truth.[8]

■■■ Turning to the facts of the case, we cannot say, as a matter of law, that Nickolas published his statements about The Factory without "actual malice," i.e. without a knowing or reckless disregard for the truth. As indicated, this is ordinarily a matter for the jury, and in order to prevail on summary judgment the defendants must show there is no genuine issue of material fact that Nickolas abused the qualified privilege. There is sufficient evidence to show he acted with a knowing or reckless disregard for the truth.

■■■■ As we stated in *Caveman Adventures,*

reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.... [T]he actual mal-

ice standard require[s] a high degree of awareness of ... probable falsity.

633 N.W.2d at 762 (quoting *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267 (1968) and *Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125, 135 (1964)). In this case, Nickolas published the allegation to the public with no basis other than an anonymous and uncorroborated tip. Although a failure to investigate, standing alone, ordinarily will not establish a knowing or reckless disregard for the truth, "[p]rofessions of good faith will be unlikely to prove persuasive ... where a story is ... *based wholly on an unverified anonymous telephone call.*" *St. Amant,* 390 U.S. at 732, 88 S.Ct. at 1326, 20 L.Ed.2d at 267–68 (emphasis added). Moreover, portions of Nickolas's statement before the council arguably show he entertained serious doubts about the truth of the phone call. We cannot say, as a matter of law, that Nickolas did not act with "actual malice." Summary judgment in favor of the defendants on the defamation claim was not proper.

**B. Intentional Infliction of Emotional Distress**

■■■ In order to establish a prima facie case of intentional infliction of emotional distress, a plaintiff must show:

(1) outrageous conduct by the defendant; (2) the defendant intentionally caused, or recklessly disregarded the probability of causing, the emotional distress; (3) plaintiff suffered severe or extreme emotional distress; and (4) the defendant's outrageous conduct was the actual and proximate cause of the emotional distress.

---

8. This is not to say, however, that evidence of a defendant's ill-will towards the plaintiff is inadmissible; it may be probative to show

knowledge of falsity or reckless disregard of the truth. Smolla, 132 U. Pa. L.Rev. at 80.

*Fuller v. Local Union No. 106*, 567 N.W.2d 419, 423 (Iowa 1997). The district court concluded the plaintiffs did not make a sufficient showing of outrageous conduct or emotional distress, and granted summary judgment to the defendants.

 We agree that The Factory and Barreca have not shown extreme or severe emotional distress. The Factory, as a limited liability company, certainly cannot suffer emotional distress; such would stretch the bounds of the legal fiction of corporate personhood too far. *See Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 37 n. 2 (1st Cir.2000) ("Because corporations, unlike natural persons, have no emotions, they cannot press claims for intentional infliction of emotional distress."); *FDIC v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir.1994); *Earth Scientists (Petro Services) Ltd. v. United States Fid. & Guar. Co.*, 619 F.Supp. 1465, 1474 (D.Kan.1985); *Wilson v. Colonial Penn Life Ins. Co.*, 454 F.Supp. 1208, 1212 n. 9 (D.Minn.1978). As for Barreca himself, he alleges he suffered "a great deal of humiliation, embarrassment, stress, and loss of sleep." The uncontroverted evidence in support of his claim, however, does not amount to "severe or extreme emotional distress." *See Ette ex rel. Ette v. Linn–Mar Cmty. Sch. Dist.*, 656 N.W.2d 62, 71 (Iowa 2002) (insufficient showing of emotional distress where one plaintiff was unable to work for three days and "troubled" for six months, and another plaintiff was uncomfortable, tired, hungry, and "a little scared"); *Ollinger v. Bennett*, 562 N.W.2d 167, 173 (Iowa 1997) (exacerbation of high blood pressure problem and sleepless nights); *Millington v. Kuba*, 532 N.W.2d 787, 794 (Iowa 1995) (headaches, insomnia, loss of appetite).

Because the plaintiffs cannot show the requisite quantum of emotional distress to establish a prima facie case, we need not decide whether they can prove outrageousness.

## IV. Conclusion

Because we find there is a genuine issue of material fact, we reverse the district court's grant of summary judgment on the defamation claim. We agree, however, that entry of summary judgment on the intentional infliction of emotional distress claim was proper. The plaintiffs have not sufficiently shown they suffered severe or extreme emotional distress, as required.

Costs on appeal are taxed against the defendants.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**