**IN THE COURT OF APPEALS OF IOWA**

No. 14-0539
Filed April 8, 2015

**RAYMOND SLACH and NANCY
SLACH,**
    Plaintiffs-Appellees,

**vs.**

**RUSSELL HEICK,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Douglas S. Russell, Judge.

A farm tenant appeals the district court's denial of his counterclaims against the lessor for breach of contract and trespass.  **REVERSED AND REMANDED.**

Willie E. Townsend, Coralville, for appellant.

Thomas D. Hobart and Sean W. Wandro of Meardon, Sueppel & Downer, P.L.C., Iowa City, for appellees.

Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**TABOR, J.**

The question in this appeal is whether a farm tenant can recover against a landlord who entered his rented fields before the lease expired and chisel plowed corn stalks the tenant had planned to bale. To answer this question, we look to the terms of the lease and the applicability of Iowa Code section 562.5A, which was enacted in 2010 and allows a farm tenant to take stalks after harvest. Finding, the statute applies, we reverse the district court's rejection of the tenant's trespass claim and remand for a determination of damages.

## I.      Factual Background and Prior Proceedings

The present controversy doubtless arises because the original landlord sold the real estate at issue. In 2010, Gerald Meardon[1] owned farmland located between Iowa City and West Branch. His brother, Edward Meardon, acting as his power of attorney,[2] leased 135 acres of that land to Russell Heick in a farm lease dated March 7, 2010. The agreement provided annual cash rent of $18,900 would be payable in installments of $9450, due on March 1 and December 15.

In January 2011, Raymond and Nancy Slach purchased the Meardon property. A notice to terminate the farm lease with Heick was sent, but not properly served by the September 1, 2010 statutory deadline,[3] so the Slachs

---

[1] Gerald Meardon lived in a nursing home in Oelwein at the time of the trial.
[2] Edward Meardon testified the lease was supposed to run for one year, from March 1, 2011, until March 1, 2012, but he mistakenly wrote in an incorrect ending date. In its ruling, the district court assumed the lease expired on March 1, 2012. Timothy Wilker replaced Edward Meardon as power of attorney in late March 2010.
[3] Iowa Code § 562.7(3) (2011).

continued to rent the farmland to Heick for the 2011 crop year. Heick made the $9450 rent payment to the Slachs in March 2011.

The trouble started brewing that spring. On April 12, 2011, Alan Bohanan, a lawyer representing Gerald Meardon, wrote a letter to Heick informing him that a condition of the sale of the property to the Slachs was the inclusion of an access easement across the property that was "not to be tilled or used for any other agricultural use." Heick delivered the letter to his attorney Donald Diehl, who informed attorney Bohanah that Heick intended "to farm the entire parcel without the new easement as he has in the past."

Later in April 2011, the Slachs installed tiling in the fields Heick was renting from them. Raymond Slach testified he gave Heick one day's notice before entering the rented fields to plow in the tiling.[4] Heick recalled receiving a phone call on the same day Slach installed the tiling. Slach told Heick nothing in the lease prevented the landlord from entering the fields to make that improvement. Attorney Diehl agreed with that assessment in a letter written to Slach on Heick's behalf, but admonished Slach to return the land to the same condition and reminded the landlord that the tenant had "several covenants available that prohibit you from interfering with his quiet enjoyment of the land." Heick testified the ground was not smoothed to his satisfaction after Slach installed the tile, causing Heick to spend the "better part of four hours" operating his field finisher before planting.

---

[4] Slach testified he installed tile lines using a plow, rather than making a trench, because using a plow left the ground smoother.

Heick planted corn on the leased acreage. After the 2011 harvest, he intended to bale the stalks. Heick testified he contemplated taking his cows to the field after the harvest, but did not know if the fences would hold them, so he decided he "would bale the stalks, feed some of them myself and sell some of them." Heick testified he asked neighbor Barry Lehman to bale the corn stalks for him. Lehman testified to the terms of his agreement with Heick: "He was going to prepare the stalks to be baled, and I was going to bale them at a cost of $10 per bale."

But before Lehman could do the custom baling, Raymond Slach entered the leased property sometime after Thanksgiving 2011 "to do fall tillage to prepare for our crop for the following year." Slach used a chisel plow to chop the stalks and partially bury them in the soil. Slach testified, because he had notified Heick on March 1, 2011, that the farm lease would be terminated for the next crop year, it was his belief that he, as the landlord, could enter the land and do the fall tillage. Slach readily admitted he gave no notice to Heick before chisel plowing the corn stalks. Slach testified: "I own the land and I am the landlord."

On December 6, 2011, attorney Diehl again wrote to Slach on Heick's behalf, asserting his client was damaged by Slach's actions:

> Mr. Heick had corn stalks in the field which he intended to bale and sell. Said corn stalks, when baled, would have brought a price at market between $25 and $40 a bale. Assuming a normal bales-per-acre count of three, and a median price of $32.50, Mr. Heick would have been paid approximately $7,117.50 for the baled corn stalks.

Diehl's letter stated it was Heick's intent to subtract his losses from the $9450 in rent Heick owed to Slach on December 15, 2011. On December 15,

2011, Heick sent Slach a check in the amount of $2332.50—which represented the difference between the $9450 in rent and the alleged loss of $7117.50. Slach did not cash the check, declining to recognize the legitimacy of the offset. But after receiving the letters from attorney Diehl, Slach returned to the leased property and plowed under corn stalks on an additional sixteen acres.

On January 27, 2012, the Slachs filed a petition at law seeking $9450 in rent allegedly owed by Heick. On February 20, 2012, Heick filed an answer alleging ouster and interference, as well as asserting counterclaims including breach of the lease, trespass, conversion, and unjust enrichment. The parties tried the case to the court on January 17, 2013.

In a decision issued February 25, 2014, the district court concluded Heick did not prove his claim of breach of the lease by the Slachs, nor did he prove his claims of trespass, conversion, or unjust enrichment. The court also determined Heick "failed to prove the loss of his anticipated corn stalk harvest resulted in any actual damages to him." Heick appeals.

## II.     Standard of Review

We review the breach-of-contract and trespass claims tried at law to the district court for the correction of legal error. *See NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010). The district court's findings of fact have the effect of a special verdict. *Id.* Our review is also for legal error when we interpret a statute. *See In re Estate of Waterman*, 847 N.W.2d 560, 565 (Iowa 2014).

**III.    Analysis of Tenant's Claims Against the Landlord**

On appeal, Heick contends the Slachs breached the farm lease and trespassed on the rental property.  He also alleges the district court erred in construing the lease against the non-drafting party, in deciding section 562.5A did not apply, and in concluding he was not damaged by Slach's actions.  We consider his claims in three steps.  First, we examine the terms of the lease, the intent of the parties, and the impact of section 562.5A (2011).  Second, we turn to Heick's allegation of trespass.  Third and finally, we assess his proof of damages.

**A.  Interpretation and Construction of Farm Lease**

A lease is a contract, so we apply ordinary contract principles to decipher its meaning and legal effect.  *Alta Vista Props., LLC v. Mauer Vision Ctr., PC*, 855 N.W.2d 722, 727 (Iowa 2014).  We consider the lease as a whole, plus any relevant extrinsic evidence.  *Id.*  When determining meaning or ambiguity, we can take into account the relations of the parties, the subject matter of the transaction, any preliminary negotiations, trade usages, and the course of dealings between these parties.  *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 436 (Iowa 2008).  But the most important evidence of the parties' intent remains the words of the agreement.  *Id.*

In this case, the lease signed by Heick and Meardon consisted of just two pages extracted from a longer form drafted by the Iowa State Bar Association (ISBA).  Slach received the two-page lease from Wilker, the new power-of-attorney, when Slach purchased the property in 2011.  Slach testified he was familiar with the ISBA farm lease form and assumed the complete form "went

with the lease that I have from the Heicks." A 2008 version of the ISBA document entitled, Official Form #135, was entered as an exhibit at trial. In paragraph five of that form, the following sentence appears: "Tenant shall not remove from the Real Estate, nor burn, any straw, stalks, stubble, or similar plant materials, all of which are recognized as the property of the Landlord." Slach testified he believed that provision applied and Heick would have been required to "get permission from [his] landlord" to remove the corn stalks.

The district court concluded "the contracting parties reached a meeting of the minds" on the short version of the farm lease and Slach, as the new owner, had the same rights and responsibilities as the previous owner under the lease. The court continued: "The standard Form 135 was not the parties' contract but does inform the court of the pattern and practice of the [Slachs] and of farmers generally and is a useful guide to the standards of reasonableness among farm landlords and farm tenants of Iowa."

The court further noted the lease was "silent about corn stalks and about the [landlord's] rights to enter upon the property." Despite that silence, the court decided legislation enacted in 2010 "could not reasonably have been within the contemplation of the parties in making the contract" and decided newly-enacted Iowa Code section 562.5A did not apply to the parties' agreement. *See* 2010 Iowa Acts ch. 1027, § 1 (enacting new section 562.5A, which addresses a farm tenant's right to crop residue in the absence of a writing stating otherwise). The district court held: "Under standard Iowa farm practices the landlord had a right to

enter the land for fall tillage. Nothing in the lease prohibited [the Slachs] from doing so."

### 1. Construction Against the Drafter

Heick contends the district court erred in not construing the lease against the drafter, then power-of-attorney Edward Meardon. Meardon testified he received the blank lease form from his cousin Bill Meardon, who was a partner in the law firm representing the Slachs. Edward Meardon acknowledged preparing the lease for Heick's signature. The Slachs point out the lease was executed and notarized at the offices of Heich's attorney.

Iowa courts construe ambiguities in the terms of a contract against the drafter. *Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991) (explaining "[a]mbiguity exists when, after application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty exists concerning which of two reasonable constructions is proper"). Where a contract is the common form of a printed lease, the rule that an agreement is construed most strongly against the one who prepared it does not apply. *O'Neal v. Hawkeye Lumber Co.*, 170 N.W. 792, 792 (Iowa 1919).

We need not decide if the rule providing for construction against the drafter applies here, because the problem is not ambiguity in the lease's terms. Instead, the problem is silence in the lease as to any right or restriction governing the landlord's entry onto the leased property for the purpose of plowing the corn stalks after harvest. After acknowledging that silence, the district court read in a term allowing the landlord's right to enter, citing "standard Iowa farm practices"

based on the language in the full ISBA lease form and another standard form lease prepared by Iowa State University.

But Iowa courts traditionally have refused to "supply terms that the parties for whatever reason chose not to include." *See Kern v. Palmer Coll. of Chiropractic*, 757 N.W.2d 651, 669 (Iowa 2008) (Appel, J., specially concurring). In this case, Meardon and Heick did not use the full ISBA lease form, which included a paragraph preventing the tenant from removing corn stalks and recognizing such materials as the landlord's property. The district court erred in assuming the parties reached an agreement on those terms when they were absent from the written agreement. *See Smith v. Stowell*, 125 N.W.2d 795, 799 (Iowa 1964) (stating a "court may not rewrite the contract" to "make for the parties a contract which they did not make for themselves, or make for them a better contract than they chose . . . to make for themselves . . . , or remake a contract . . . in order to meet special circumstances or contingencies against which the parties have not protected themselves"). The better evidence of the landlord's intent was Meardon's testimony he did not intend the lease to restrict Heick's right to remove the corn stalks from the property. Because the Slachs bought the property subject to the lease Meardon had executed and because Meardon did not intend the lease to restrict Heick's right to remove the corn stalks, the district court erred by writing into this lease a term found only in the unexecuted, full-lease forms. *See id.*

### 2. Application of Iowa Code section 562.5A

Because the lease did not address who had the right to use the corn stalks remaining after the 2011 harvest and because the parties to the lease did not intend to restrict Heick's right to remove the corn stalks, we examine whether recent legislation aids the resolution of this appeal. *See Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 129-30 (1991) ("A contract depends on a regime of common and statutory law for its effectiveness and enforcement.").

In 2010, the Iowa General Assembly passed HF 2380, which provided "the rights and benefits of the stover to the tenant farmer." *See* Jack W. Leverenz, *Corn Flakes Aren't Just For Kellogg's: A Look at Corn Stover and Its Effect on Leasing in the Landlord Tenant Relationship*, 17 Drake J. Agric. L. 511, 528 (2012) (hereinafter Leverenz). The provision was signed into law on March 3, 2010, and went into effect on July 1, 2010. *See* 2010 Iowa Acts ch. 1027, § 1.

The statute provides:

> **Farm tenancy—right to take part of a harvested crop's aboveground plant**
> Unless otherwise agreed to in writing by a lessor and farm tenant, a farm tenant may take any part of the aboveground part of a plant associated with a crop, at the time of harvest or after the harvest, until the farm tenancy terminates as provided in this chapter.

Iowa Code § 562.5A (2011).

The legislature enacted the provision when corn stover[5] emerged as "a growing and valuable commodity in the biofuel industry." Leverenz, 17 Drake J. Agric. L. at 527; *see also* Neil D. Hamilton, *Harvesting the Law: Personal Reflections on Thirty Years of Change in Agricultural Legislation*, 46 Creighton L. Rev. 563, 589 n.63 (2013) (noting amendment occurred "as a result of interest in producing cellulosic ethanol and the growing market for corn stalks"). One legal commentator has opined: "It seems fairly apparent section 562.5A is designed to favor the tenant farmer. Analyzing the law, the tenant farmer by default has rights to the 'aboveground parts of the plant' unless the tenancy has ended or another scenario was drafted in the written contract." Leverenz, 17 Drake J. Agric. L. at 528–529.

The statute was discussed during the trial. In response to a question from Heick's attorney, Slach testified he was not familiar with the provision and after reading it, Slach said: "I'm not sure that I agree with what that is saying." The district court ruled section 562.5A did not apply because the lease was signed March 7, 2010, and the code section was not effective until July 1, 2010. The court concluded the statute "did not have ex-post facto application to the parties' agreement."

On appeal, Heick argues the court erred in finding the section did not apply. Heick contends the court overlooked the fact his lease was renewed on September 1, 2010. In his view, "after July 1, 2010, any lease that did not contain a clause to refute 562.5A fell under its purview."

---

[5] Corn stover is defined as "corn stalks, leaves, and cobs remaining aboveground on the field after the harvest of corn kernels." Leverenz*,* 17 Drake J. Agric. L. at 511.

The Slachs counter with the tenet of contract law that parties are deemed to have entered an agreement with reference to principles of law existing at the time the contract was made. See *Norfolk*, 499 U.S. at 130 ("Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms."). The Slachs discuss the automatic renewal aspect of farm leases under Iowa law, that is, a farm tenancy "shall continue beyond the agreed term for the following crop year and *otherwise upon the same terms and conditions as the original lease* unless written notice for termination is served upon either party or a successor of the party in the manner provided in section 562.7." Iowa Code § 562.6 (emphasis added). They fault Heick for not citing any authority to support his assertion their failure to terminate the lease in 2010 led the parties into entering a "new lease" that would be subject to the crop residue presumption in section 562.5A.

Both sides advance viable arguments, and we find this to be a close question, but we respectfully disagree with the district court's conclusion the new statute does not govern this renewal situation. The Slach's argument could prevent the new statutory presumption in favor of the tenants from being effective as to renewed farm leases for many years, a result that would undermine the legislative objective of presuming such rights belong to the tenant unless the parties agree otherwise in writing. *See id.* We believe the legislative intent in passing the statute supports the application of section 562.5A to Heick's renewed lease.

The legislature acted on behalf of farm tenants in passing section 562.5A, granting them default rights to valuable crop materials. The amendment was inserted between section 562.5, entitled "Termination of farm tenancies" and section 562.6, entitled "Agreement for termination"—signaling the lawmakers' appreciation and knowledge of the fact that, by statute, farm tenancies continue unless written notice for termination is timely served. *See id*; *see also McCracken v. Iowa Dep't of Human Servs.*, 595 N.W.2d 779, 784 (Iowa 1999) ("[W]e consider and construe all parts of a statute together."). Section 562.5A allows farm tenants to take corn stalks after harvest and until the farm tenancy terminates, unless otherwise agreed to in writing by a lessor and tenant. The new section does not expressly address whether the presumption in favor of tenants would apply only to tenancies originating after the effective date of July 1, 2010, or if tenancies that were not terminated by notice on September 1, 2010, then would become subject to the new presumption.

Statutes making substantive changes in the law generally apply prospectively. Iowa Code § 4.5; *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Shell Oil Co.*, 606 N.W.2d 370, 375 (Iowa 2000). In other words, they impact only facts or actions that arise after their effective date. *See State v. DeCamp*, 622 N.W.2d 290, 293 (Iowa 2001). The pertinent facts or actions mentioned in section 562.5A are (1) the existence of a written agreement, (2) the harvest, and (3) the termination of the farm tenancy. In Heick's case, the harvest at issue (fall 2011) and the termination of the farm tenancy (March 2012) occurred after the effective date of the statute (July 1, 2010). In their written

agreement, signed before the effective date of the new statute, the landlord and tenant did not address who had rights to the corn stalks. But after the statute's effective date, the parties were free to negotiate the ownership of the corn stalks or terminate the farm lease, and did not do so.[6] *See* Iowa Code § 562.7. Accordingly, application of the new statute would not interfere with the parties' right to contract. *See generally Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 431, 437 (1934) (explaining "obligations of a contract are impaired by a law which renders them invalid, or releases or extinguishes them," but also explaining the fact some statutes might impair "the obligation of contracts does not prevent the state from exercising such powers as are vested in it [that] are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected").

We agree with Heick's position that each time a farm lease is renewed rather than terminated under chapter 562, in essence, a new contract is formed. And where a statute affecting a farm lease is enacted before the renewal, the renewed lease is subject to the intervening statute. *Cf. In re Westminster Assocs., Ltd.*, 285 B.R. 38, 45 (Bankr. M.D. Fla. 2002) (holding each annual renewal of termite agreement between property owner and pest control company was in nature of new contract which, to extent renewals took place after statute's effective date, made agreements subject to statutory requirements).

---

[6] Recall that the Slachs tried to terminate Heick's lease after buying the land, but did not properly effectuate personal service by September 1, 2010, as required by Iowa Code section 562.7.

Because the Slachs were bound by the renewed lease with Heick through the 2011 harvest, they were subject to the requirements of section 562.5A. Specifically, Heick had the statutory right to the corn stalks where the terms and conditions of the renewed lease did not specify otherwise. *See* Iowa Code § 562.6. In light of this right (and Mearden's intent in executing the original lease), we turn to Heick's trespass claim.[7]

### B. Trespass

Heick argues the district court erred in denying his claim of trespass against the Slachs. A claim for trespass on land alleges the wrongful interference with one's possessory rights in the property. *Robert's River Rides, Inc. v. Steamboat Dev. Corp.*, 520 N.W.2d 294, 301 (Iowa 1994), *abrogated on other grounds by Barreca v. Nickolas*, 683 N.W.2d 111, 119 (Iowa 2004). A person may be liable to another for the tort of trespass if he intentionally enters land in the possession of the other, regardless of whether he thereby causes harm to any legally protected interest. *Id.* A person is in possession of land if he has occupancy and the intent to control it. *Id.*

On appeal, the Slachs acknowledge Heick had a right to possess the property under the lease. But because the lease was silent regarding their right to enter and plow the corn stalks after harvest, they contend the district court was entitled to look to farm customs and usage as it did in rejecting Heick's trespass claim. We disagree. While the lease was silent, section 562.5A dispelled the notion the landlord was entitled to plow the corn stalks into the ground. The

---

[7] Because we reverse and remand for a calculation of the damages caused by the Slachs trespass onto the land, we need not resolve Heick's breach of contract claim.

statute placed the right to the corn stalks with Heick. The Slachs entry onto the land to plow the stalks interfered with Heich's statutory right and was a trespass. *See generally Clark v. Strohbeen*, 181 N.W. 430, 433 (Iowa 1921) (holding landlord can become trespasser if he enters upon leased premises without the consent of the tenant and appropriates possession to himself before the expiration of the lease). Thus, the district court erred in rejecting Heick's claim of trespass.

### C. Damages

The party seeking damages bears the burden of proving them; the factfinder must deny recovery where the record is uncertain as to whether a party has sustained damages. *Data Documents, Inc. v. Pottawattamie Cnty.*, 604 N.W.2d 611, 616 (Iowa 2000). But we recognize a distinction between "'proof of the fact that damages have been sustained and proof of the amount of those damages.'" *See Pavone v. Kirke*, 801 N.W.2d 477, 495 (Iowa 2011) (quoting *Olson v. Nieman's, Ltd.*, 579 N.W.2d 299, 309 (Iowa 1998)). "[I]f the uncertainty merely lies in the amount of damages sustained, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated." *St. Malachy Roman Catholic Congregation v. Ingram*, 841 N.W.2d 338, 352 (Iowa 2013). We tolerate some speculation on the *amount* of damages sustained. *Id.*

The district court ruled Heick suffered no damages as a result of the landlord's cultivation of the corn stalks. The court accepted the Slachs' position that Heick's damage estimates were "overreaching" and repeated Slach's

assertion he plowed sixty-four not eighty-nine acres. The court set out the testimony estimating costs of the baling process, and from its calculations the court determined Heick incurred net damages "at most" of $2016 for sixty-four acres. The court also found Heick's estimate would be reduced by the cost of fertilizer to replace the benefit of returning the crop residue to the soil.

In addition, the district court held Heick suffered no damages because "[e]ven if he had harvested the corn stalks and obtained a profit the [Slachs] had a security interest pursuant to the lease in the corn stalk bales and in any profit obtained from their sale, which could have been enforced to collect the unpaid rent from [Heich]." Heick challenges the court's reasoning as follows: "Of course it could be used to pay the rent. That is why many Iowa farmers harvest the corn stalks. It is money. Whether they use it to pay the rent or otherwise the money lost still amounts to damages." We see merit in Heick's point.

The district court erred in finding Heick "failed to prove the loss of his anticipated corn stalk harvest resulted in any actual damages to him." The court blurred the line between the uncertainty of the *amount* of Heick's damages and the fact he *sustained* damages. Heick's neighbor Barry Lehman testified he had an agreement with Heick to bale the stalks for ten dollars per bale, as Heick planned to do the preparatory work himself. Heick presented credible evidence the bales could be marketed for twenty-five to forty dollars each and estimated a yield of three bales for every eighty-four acres of cornfield—for an estimated loss of $6300 to $10,080 from the Slachs' action of plowing the stalks. From our

review of the trial record, we are convinced Heick sustained some amount of damages.

We reverse the district court's decision on the trespass claim and remand for a determination of Heick's damages consistent with this opinion.

**REVERSED AND REMANDED.**