Steven John THEISEN, Appellant,

v.

COVENANT MEDICAL CENTER, INC., Appellee.

No. 99–0533.

Supreme Court of Iowa.

Nov. 15, 2001.

Jeffrey L. Goodman and Robert K. DuPuy of Pingel & Templer, P.C., West Des Moines, for appellant.

Iris E. Muchmore and Leonard T. Strand of Simmons, Perrine, Albright & Ellwood, P.L.C., Cedar Rapids, for appellee.

NEUMAN, Justice.

Steven Theisen was fired from his job as security manager for Covenant Medical Center because, after he was suspected of making an obscene phone call to another employee, he refused to submit to voice print analysis to confirm or refute the accusation. Theisen sued Covenant for wrongful discharge. On Theisen's appeal from the district court's summary judgment for Covenant, the principal question is whether requiring an employee to submit to voice print analysis violates the letter or spirit of Iowa Code section 730.4 (1995). By its terms, section 730.4 prohibits an employer from requiring an employee to submit to a polygraph examination as a condition or pre-condition of employment.

We are convinced, as was the district court, that section 730.4 has no application to voice print analysis. Because Covenant's conduct violated neither statute nor public policy, all of Theisen's wrongful-discharge claims premised on that theory must fail. As will be explained further, Theisen's related employment claims are equally unavailing, as are his claims for defamation by compelled self-publication and dramatic pantomime. We therefore affirm the judgment of the district court,

which preserved for trial only Theisen's claim for direct defamation.[1]

## I. Background Facts.

On the evening of May 22, 1995, someone left an obscene message on the voice mail of Bobbie Hartwig, a nurse at Covenant Medical Center in Waterloo. Hartwig discovered the message when she arrived at work the next morning. She contacted her supervisor, Nancy Schuler, about the call. Schuler, who is also the head of the Quality Services department, advised Hartwig that nothing further needed to be done unless Hartwig received additional calls or messages. Hartwig also called Steve Theisen, Covenant's security manager, to report the call. Theisen never returned her call.

Although Hartwig had not immediately mentioned it to Schuler or Theisen, upon hearing the first words of the obscene message she recognized the voice as Steve Theisen's. In her words, she "just knew the minute [she] heard his voice that it was him." She thought the whole thing must be a joke but was troubled by the idea that it might be more than that. Hartwig replayed the message for her husband, Gary. Based on his own interaction with Theisen in the small town where they lived, he also believed the voice was Theisen's. Several days later, Bobbie Hartwig played the message for Schuler, who was also Theisen's supervisor. Schuler also identified the voice as Theisen's. Both Gary Hartwig and Schuler identified the voice as Theisen's before Bobbie Hartwig revealed her own belief.

Schuler and Ray Fusco, Covenant's vice president for employee resources, began a sexual harassment investigation. The investigation included making a tape of the obscene call and submitting it for voice print analysis or spectrography along with comparison voice mail messages known to have been left by Theisen. Covenant's voice analyst, Mindy Wilson, ultimately concluded that she could not arrive at a "solid" identification because the obscene message was too brief to provide a good comparison with the known samples of Theisen's voice. But she concluded Theisen could not be eliminated as a suspect and recommended that he furnish an exemplar of the obscene message for analysis.

Approximately one month after the initial incident, Theisen met with Schuler and Fusco. Theisen was told about the phone call and that four persons had identified the voice as his.[2] After listening to the message, Theisen denied he was the speaker. Schuler and Fusco then asked Theisen to submit to voice print analysis. Theisen said he would have to think about it. Schuler and Fusco then suspended Theisen for two weeks to allow him to consider his decision. After the meeting, Theisen returned to his office to retrieve personal items before security officer Roger Shook escorted him out of the building.

Theisen consulted with an attorney and thereafter refused to submit an exemplar of his voice for analysis. His counsel advised Covenant by letter that Theisen's refusal rested on their belief that Iowa Code section 730.4 "strictly prohibited"

---

1. Theisen subsequently dismissed without prejudice his direct defamation claim, thereby establishing that this is not an interlocutory appeal but an appeal from a final order adjudicating all the rights of the parties.

2. In addition to Bobbie and Gary Hartwig and Schuler, Roger Shook—a member of Covenant's security force—also identified the voice as Theisen's. However, Shook's identification came after Bobbie Hartwig and Schuler told him they thought the voice was Theisen's.

such testing. Covenant responded by firing Theisen.

Theisen then initiated a review of his termination in accordance with the "Fair Treatment" provisions of Covenant's employee handbook. Several meetings took place between Theisen, his employee representative, Schuler and Fusco. Repeated requests that Theisen submit to voice analysis were rejected. He ultimately submitted an exemplar to his own expert, however. The expert reported "no similarities" between the voice sample submitted by Covenant and the voice sample furnished by Theisen. Thereafter, Theisen submitted his report to a nine-member employee committee who, after interviewing all the pertinent players, unanimously recommended Theisen's reinstatement.

Covenant's president, Raymond Burfeind, ultimately reviewed the actions of his staff, along with all the material collected during the Fair Treatment process. Based on his review, Burfeind upheld the termination. He advised Theisen by letter that his decision was based on Theisen's refusal to comply "with reasonable requests which could have determined with more certainty the facts that were present."

## II. Legal Proceedings.

Theisen sued Covenant for damages stemming from wrongful termination and defamation. The wrongful termination count rested on the theory that Covenant's request for voice print analysis violated Theisen's rights as an employee under Iowa Code section 730.4. As later amended, the petition also alleged damages arising from retaliatory discharge, negligent investigation, breach of contract and/or promissory estoppel, and intentional infliction of emotional distress.

Covenant moved for summary judgment. On Theisen's claim of wrongful discharge, the court acknowledged that voice print analysis "may be used as evidence to help prove a person lied," but concluded that this did not make the procedure a prohibited polygraph examination governed by section 730.4. Because Covenant's request for voice print analysis did not violate section 730.4, the court ruled Covenant's decision to fire Theisen breached no public policy preventing termination of his at-will employment status.

The court likewise rejected Theisen's negligent investigation claim, noting that such a cause of action has not been recognized in this context and likely would not be inasmuch as an at-will employee could be terminated with no investigation at all. Also rejected was Theisen's claim that he was defamed through compelled self-publication to potential employers, family, friends and other community members. The court reasoned that, while Iowa does recognize defamation by compelled self-publication, Covenant's statements were protected by a qualified immunity which was not lost by Theisen's later repetition. Finally, the court found no factual or legal support in the summary judgment record for recovery under theories of breach of contract, promissory estoppel, or intentional infliction of emotional distress. This appeal by Theisen followed.

## III. Scope of Review.

We review a district court's ruling on summary judgment for the correction of errors at law. *Teague v. Mosley,* 552 N.W.2d 646, 648 (Iowa 1996). Summary judgment is appropriate only if the entire record, viewed as a whole, reveals no genuine issues of material fact and establishes that the district court correctly applied the law. *Id.* In making this determination, we rely on the pleadings, depositions, answers to interrogatories, admissions and any affidavits submitted as part of the summary

judgment record. Iowa R. Civ. P. 237(c). We must view the record made in the light most favorable to the nonmoving party. *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 45 (Iowa 1999).

## IV. Issues on Appeal.

*A. Voice print analysis and Iowa Code section 730.4.* Theisen argued in the district court, and urges on appeal, that Iowa Code section 730.4 prohibited Covenant from requesting that he submit to voice print analysis as a condition of keeping his job. Because Covenant's conduct violated public policy, Theisen contends, the fact that he was an employee-at-will presents no obstacle to the prosecution of his claim. Thus, before turning to the statute, we review briefly the employment-at-will doctrine.

**▇▇▇▇** *Employment-at-will.* The doctrine of employment-at-will, well-established in Iowa law, permits an employer or employee who is not under contract to terminate employment at any time for any lawful reason. *Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 202 (Iowa 1997); *Fogel v. Trustees of Iowa Coll.*, 446 N.W.2d 451, 455 (Iowa 1989). This court has recognized only two exceptions to the doctrine. First, an employee handbook that specifically limits termination of employment except under certain conditions or for cause may create a contract of employment. *Phipps*, 558 N.W.2d at 202; *Fogel*, 446 N.W.2d at 455. Second, we have held that an employer may not terminate an employee for a reason that violates public policy. *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560 (Iowa 1988); *accord Phipps*, 558 N.W.2d at 202; *Fogel*, 446 N.W.2d at 455. To defeat the presumption of at-will employment, such policy must be well-recognized and defined, generally by state constitution or statute.

*Phipps*, 558 N.W.2d at 203; *Springer*, 429 N.W.2d at 560.

Theisen contends, and for purposes of summary judgment we find, that Covenant fired him because he refused to submit to voice print analysis. Covenant's request, Theisen argues, violated the public policy expressed in Iowa Code section 730.4. Thus, his argument continues, Covenant could not lawfully discharge him for failure to comply. To determine whether the district court correctly rejected these contentions, we turn to the statute at issue.

*Iowa Code section 730.4.* The statute upon which Theisen relies provides, in pertinent part, as follows:

An employer shall not as a condition of employment, promotion, or change in status of employment, or as an express or implied condition of a benefit or privilege of employment, knowingly do any of the following:

a. Request or require that an employee or applicant for employment take or submit to a polygraph examination.

b. Administer, cause to be administered, threaten to administer, or attempt to administer a polygraph examination to an employee or applicant for employment.

Iowa Code § 730.4(2). Of particular significance to this case, a polygraph examination is defined by statute as

any procedure which involves the use of instrumentation or a mechanical or electrical device to enable or assist the detection of deception, the verification of truthfulness, or the rendering of a diagnostic opinion regarding either of these, and includes a lie detector or similar test.

Iowa Code § 730.4(1).

The district court, focusing on the common meaning of polygraph as an instrument used to determine truthfulness by

measuring physiological reactions to responses to questions, determined that voice print analysis does not "assist in the detection of deception" in the way a lie detector does. Theisen contends the court erred because it disregarded the definition of "polygraph examination" supplied by section 730.4(1). He argues that when the statute was amended in 1988 to define a polygraph examination as a procedure, rather than a specific device or machine, the legislature significantly broadened the types of activities prohibited. *Compare* Iowa Code § 730.4(1) (1985) (defining "polygraph" as "any mechanical or electrical instrument or device" used to determine truthfulness), *with* Iowa Code § 730.4(1) (1989) (defining "polygraph *examination*" to include "any *procedure* " involving the use of instrumentation or mechanical device to *"assist* the detection of deception" or verification of truthfulness, including "a lie detector or similar test" (emphasis added)). In other words, instead of merely prohibiting the use of a specific machine to detect truthfulness, Theisen claims the legislature intended by its 1988 amendment to outlaw all *procedures* used by employers to measure veracity. This would include, he argues, the voice print analysis requested by Covenant.

Even if Theisen is correct about the legislature's intent to broaden the reach of section 730.4, we are not convinced that the statute prohibits what Covenant sought from Theisen here. Covenant asked Theisen to submit to voice print analysis, a procedure which compares a known voice sample with an unknown sample as a way of identifying the unknown voice. The procedure is a method of identification. It is perhaps not as exact as fingerprinting or DNA analysis, but it is a method of identification nonetheless. And while the procedure may remotely aid the detection of deception or verification of truthfulness, as Covenant concedes, that is not its function or purpose. Truthfulness comes into the picture only when the subject denies making the unknown statement. The truth or veracity of the denial cannot be measured by voice print analysis. It remains an *identification* tool, no matter what the subject's response.

 Contrary to Theisen's assertions, the language of section 730.4 gives no indication that the legislature intended to prohibit the use of methods or devices designed to counter an employee's denial of wrongdoing. The statute clearly places limits on the testing or analysis to which an employer can be subjected, but it does not prohibit an employer from using *identification* techniques such as comparison of photographs, fingerprints or voice prints. Legislative intent is revealed by what a statute says, not what it could or should have said. *Berger v. Iowa Fin. Auth.*, 593 N.W.2d 136, 138 (Iowa 1999). An identification technique does not become a polygraph examination, prohibited by statute, simply because an employee adamantly denies certain behavior and the truthfulness of the denial becomes an issue.

 To summarize, we think the plain language of section 730.4 pertains to devices, such as polygraphs, that purport to measure the truth or veracity of an employee's statement. The statute does not, by its terms, prohibit lawful tests or procedures used by an employer in the identification of employees suspected of workplace crime. Nor has Theisen advanced a cogent argument explaining how an employer's use of voice print analysis violates any other well-defined public policy.

 ***Application of law to undisputed facts.*** Because the voice identification procedure requested by Covenant violated neither law nor public policy, Covenant's decision to terminate Theisen for failing to

cooperate in the investigation was not wrongful. Theisen was an at-will employee. The district court correctly ruled that his claims for wrongful and retaliatory discharge fail as a matter of law.

■ **B. Negligent investigation.** Theisen next claims that Covenant owed him a duty of care to conduct a reasonable, non-negligent investigation prior to firing him. Although it is not entirely clear on what grounds his claim rests, Theisen appears to first analogize his claim to a cause of action for negligent hiring, retention and supervision. In the alternative he claims that when Covenant undertook its sexual harassment investigation, it assumed a duty to Theisen to conduct that investigation in a reasonable manner.

Covenant counters that Theisen's claim of negligent investigation poses "a full, frontal attack" on the Iowa law of employment at-will. It analogizes Theisen's claim to the claim of negligent discharge rejected by this court in *Huegerich v. IBP, Inc.*, 547 N.W.2d 216 (Iowa 1996). If an employer cannot be found liable to an at-will employee for negligent discharge, Covenant argues, that same employer should not be liable for any steps taken prior to the discharge. Covenant also argues that if the court recognizes a cause of action for negligent investigation in favor of at-will employees, it will turn every employer's termination decision into a jury question of reasonableness, thus completely swallowing the employment-at-will doctrine.

As with Theisen's first claim, our analysis is grounded in the basic nature of at-will employment: an employer can terminate an employee for any reason or no reason at all, so long as the reason does not violate public policy. *Schoff,* 604 N.W.2d at 47; *Fogel,* 446 N.W.2d at 455. We have already discussed the public-policy exception first recognized in *Springer,* 429 N.W.2d at 560. The other exception

arises when an employee handbook or policy manual creates a unilateral employment contract. *Huegerich,* 547 N.W.2d at 220. In *Huegerich,* an at-will employee fired for violating IBP's look-alike drug policy asked this court to create a new exception to at-will employment—negligent discharge.

The plaintiff in *Huegerich* alleged, and the district court found, that IBP negligently administered its drug policy by failing to provide an orientation program or advising that an employee could be terminated if caught in possession of look-alike drugs. *Id.* at 219. This court, noting the myriad of other states that had rejected such a negligent discharge claim, likewise rejected Huegerich's argument. *Id.* at 220. Our decision rested on the belief that imposing "a duty of care upon an employer when discharging an employee ... would radically alter" the doctrine of employment-at-will. *Id.*

Theisen resists Covenant's analogy to *Huegerich,* insisting that a claim of negligent investigation is more akin to the claims of negligent hiring and supervision recognized by this court in *Godar v. Edwards,* 588 N.W.2d 701 (Iowa 1999). The plaintiff in *Godar,* who had been abused throughout his youth by a school district employee, sued the school district, alleging negligence in hiring, supervision, and retention. Although we concluded that *Godar* raised insufficient facts to generate a jury question of negligence, we recognized the viability of such a cause of action based on the "principle that a person conducting an activity through employees is subject to liability for harm resulting from conduct in the employment of improper persons involving risk of harm to others." *Godar,* 588 N.W.2d at 708 (quoting 27 Am.Jur.2d *Employment Relationship* § 473, at 913 (1996)).

Theisen theorizes that claims of negligent hiring, supervision and retention provide the basis for a negligent investigation claim because hiring, supervision and retention are all based on an employer's investigation of an employee and his or her conduct or the lack of any such investigation. He specifically challenges the actions leading up to his own termination, including the fact that the investigation was initiated by Nancy Schuler, a supervisor with whom Theisen had a contentious relationship.

■ The weakness in Theisen's theory is that it still rests on a decision to terminate him, which Covenant could do for any lawful reason, or for no reason at all. Employment at-will, by definition, does not require an employer's decision to be logical or rational. Theisen's claim of negligent investigation goes to the heart of the employer's decision-making process. To allow such a claim would not only contravene this court's denial of a negligent discharge claim in *Huegerich,* but it would also create an exception swallowing the rule of at-will employment. *See Johnson v. Delchamps, Inc.,* 897 F.2d 808, 811 (5th Cir. 1990) (holding that because an employer could fire an employee for any reason or no reason "it was equally at liberty to discharge [the employee] for a reason based on incorrect information, even if that information was carelessly gathered" (footnote omitted)); *see also Morris v. Hartford Courant Co.,* 200 Conn. 676, 513 A.2d 66, 68 (1986) (rejecting wrongful discharge claim based on negligent investigation of criminal matter as public policy exception to doctrine of at-will employment).

■ In the alternative, Theisen asserts that even if Covenant was not compelled to undertake an investigation prior to firing him, once it did so it had a duty to conduct the investigation with reasonable care. Covenant counters that its duty to investi-gate the obscene voice mail message was a duty running in Hartwig's favor as the victim of possible sexual harassment. Following through on that obligation, Covenant urges, does not mean it assumed a duty to Theisen, an at-will employee who was the suspected perpetrator.

Theisen rests his claim of duty on the Restatement (Second) of Torts section 323. Under that restatement section,

[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965).

Theisen's reliance on section 323 is misplaced. Covenant undertook its investigation to pursue allegations of sexual harassment, a duty which it owed to Bobbie Hartwig, not Theisen. *See Lynch v. City of Des Moines,* 454 N.W.2d 827, 833–34 (Iowa 1990). And although an assumed duty recognized by section 323 may also run in favor of a third person, *see* Restatement (Second) of Torts § 324A, under that section a party who undertakes to perform a service to another which is essential for the protection of a third person is only liable to the third person for *physical* harm. Restatement (Second) of Torts § 324A. Even if Covenant should have recognized the need to protect Theisen, Theisen did not suffer any physical harm. Thus none of the Restatement sections on which Theisen relies establish a duty on

Covenant's part to conduct a reasonable investigation in his favor.

■ Finally, we reject Theisen's contention, raised in his reply brief, that our decision in *Schoff v. Combined Insurance Co.* recognized an employee's cause of action against an employer for negligent supervision and retention of another employee. He asserts that, by analogy, an employee should be permitted to maintain an action against an employer for negligent investigation. But, as already discussed, an employer has no duty to conduct a reasonable investigation in favor of an at-will employee. In the absence of a duty of care, *Schoff* does not support Theisen.

In summary, the district court correctly dismissed Theisen's negligent investigation claim.

*C. Defamation.* Theisen claims that Covenant defamed him, both through Theisen's compelled self-publication of Covenant's accusation of sexual harassment and through security officer Roger Shook's action in escorting Theisen out of the building following his suspension. The district court rejected these claims, ruling that an employer is entitled to qualified immunity for statements made to an employee to protect the employer's interest, and that the privilege extends to situations in which the employee feels compelled to repeat such statements. For the reasons that follow, we are convinced that the district court correctly applied the law to the undisputed record before us.

■ *Compelled self-publication.* The law of defamation embraces the "twin torts" of libel and slander, that is, the publication of statements that "tend to injure a person's reputation and good name." *Lara v. Thomas,* 512 N.W.2d 777, 785 (Iowa 1994) (citing W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 111,

at 771 (5th ed.1984)); *accord Thompto v. Coborn's, Inc.,* 871 F.Supp. 1097, 1124 (N.D.Iowa 1994). Here, Theisen alleges oral publication of Covenant's defamatory statement accusing him of making an obscene phone call to another employee, making the applicable tort slander. *Lara,* 512 N.W.2d at 785.

■ A key element of any defamation claim is proof of publication by the defendant to someone other than the subject of the allegedly defamatory statement. *Belcher v. Little,* 315 N.W.2d 734, 737 (Iowa 1982). Put another way, "the defamed party has not suffered injury until someone other than himself learns of the defamation." *Id.* at 738. And although it is the general rule that an injured party cannot create a defamation action by repeating the statement originally made only to him or her, this court recognized in *Belcher* an exception to the rule where the subject is under "strong compulsion" to repeat the allegedly defamatory statement. *Id.* The exception rests on the concept of foreseeability—if the person making the statement can reasonably foresee that the person defamed will be compelled to repeat the defamatory statement to a third party, "there is a strong causal link between the originator's actions and the harm caused to the defamed person, and . . . this causal connection makes the imposition of liability reasonable." 50 Am. Jur.2d *Libel and Slander* § 242, at 501 (1995). Such forseeability is especially apparent in employment situations because an employee will ordinarily seek new employment after being terminated for alleged wrongdoing. *Id.*

■ An employer is not without protection, however. A limited privilege applies to

communications made in good faith on any subject matter in which the [person communicating] has an interest, or with

reference to which he has a duty ... if made to another person having a corresponding interest or duty, on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest.

50 Am.Jur.2d *Libel and Slander* § 276, at 547. In order for the privilege to apply, a defendant must prove four things: (1) the statement was made in good faith, (2) the defendant had an interest to uphold, (3) the scope of the statement was limited to the identified interest, and (4) the statement was published on a proper occasion, in a proper manner, and to proper parties only. *Thompto*, 871 F.Supp. at 1126. Applying these factors, it has been held that a qualified privilege attaches to an employer's statements made to an employee concerning reasons for the employee's discharge. *Id.; Lewis v. Equitable Life Assurance Soc'y of the United States*, 389 N.W.2d 876, 889–90 (Minn.1986). The privilege may be lost, however, if the speaker acts with actual malice, or exceeds or abuses the privilege through, for example, excessive publication or through publication to persons other than those who have a legitimate interest in the subject of the statements. 50 Am.Jur.2d *Libel and Slander* §§ 279, 280, 284, at 554–55, 559–60, 565–66.

■ Here, the theories of compelled self-publication and qualified immunity intersect so that the question becomes whether the privilege that attaches to an employer's statements concerning the reasons for termination applies when the terminated employee repeats those statements to others. Theisen contends he was compelled to publish Covenant's accusations to family, friends, and future employers in order to secure their support for his "Fair Treatment" hearing and seek other employment. He also argues that even if Covenant can claim qualified privilege, he

generated a jury question as to whether Covenant waived its privilege by acting with malice. Taking a different tack, Covenant urges this court to overrule *Belcher* and hold that the subject of defamatory statements cannot create his own defamation action under the doctrine of self-publication.

As we analyze these competing arguments, we note that Theisen's defamation claim (unlike his wrongful discharge claim) rests on the alleged falsity of Covenant's accusation that he sent an obscene voice mail message to another employee. Regardless of the truth or falsity of Covenant's statement, it was plainly offered as an explanation for Theisen's termination, a matter clearly encompassed within their employer-employee relationship. The statement was made in good faith, based on the identification of Theisen's voice by four persons. Covenant had an undisputed interest in the subject of the statement, which was made as part of a sexual harassment investigation. And the statement was made during a closed-door meeting with Theisen's supervisor and the director of employee services, a proper time and place to discuss such an accusation with limited parties. Thus Covenant's statement easily falls within the criteria necessary to establish a qualified privilege as a matter of law. *See, e.g., Thompto*, 871 F.Supp. at 1126; *Higgins v. Gordon Jewelry Corp.*, 433 N.W.2d 306, 308, 309 (Iowa Ct.App.1988); *Lewis*, 389 N.W.2d at 889.

■ As already noted, Theisen has dismissed his claim for direct defamation. So the only question remaining is whether qualified immunity applies when the person publishing the statement is the party injured by the statement rather than the party who originally made the statement. We are convinced that it must. As wisely noted by the Minnesota Supreme Court, it makes little sense to deny the privilege

when the same communication is being conveyed by a different mode of publication. *Lewis,* 389 N.W.2d at 890. Moreover, in the employment context, the qualified privilege is the only effective means of preventing every termination decision from automatically becoming a case of defamation. *Id.* As the Minnesota court observed,

> [i]t is in the public interest that information regarding an employee's discharge be readily available to the discharged employee and to prospective employers, and we are concerned that, unless a significant privilege is recognized by the courts, employers will decline to inform employees of reasons for discharges.

*Id; accord Thompto,* 871 F.Supp. at 1128 (holding that limiting the privilege to statements made only by employers and not by employees would "create an insupportable conundrum of holding defendants liable for statements qualified in one context but not in a context that has nothing to do with the defendants' conduct"). We think this reasoning is sound and, therefore, recognize and adopt a qualified privilege for statements made by employers to employees concerning the reasons for an employee's discharge regardless of whether the employer or employee publishes the statement. Without such a privilege, employers would be stymied in their ability to effectively deal with personnel matters and left with the choice of giving no reason for terminating employment or hoping an employee will not reveal the reason for discharge to a prospective employer. The district court was correct in so ruling.

■ As for the question of whether Covenant exceeded its privilege and thereby waived its immunity, the record is devoid of any proof of actual malice on Covenant's part. Theisen's assertion that Covenant demanded submission to an "unlawful" examination to disprove the allegation is unfounded as a matter of law. Accordingly, the district court correctly granted judgment for Covenant on Theisen's compelled self-publication claim.

■ *Dramatic pantomime.* Theisen's petition also urged recovery based on actions taken by a Covenant security officer, Roger Shook, which Theisen refers to as dramatic pantomime. Specifically, Theisen claims he was defamed when Shook, dressed in plain clothes, accompanied Theisen to his office to retrieve personal belongings and then escorted Theisen out of the building.

At the outset we question whether Theisen has properly preserved the issue for our review, because the district court did not specifically address the claim in its summary judgment ruling and Theisen sought no expansion of the court's ruling to address it. We are convinced, however, that the court impliedly rejected the claim on its merits, and rightly so. Assuming such conduct by a security officer might rise to the level of defamation under some circumstances, *see, e.g., Bonkowski v. Arlan's Dep't Store,* 12 Mich.App. 88, 162 N.W.2d 347, 349, 352 (1968) *rev'd on other grounds,* 383 Mich. 90, 174 N.W.2d 765 (1970) (uniformed security guard stopped woman and asked her to empty her purse after another patron accused her of shoplifting), the record here does not support such a claim, legally or factually.

Proof that a terminated employee was simply escorted from the place of employment, without words or other conduct, has been held insufficient as a matter of law to establish a claim of defamation by dramatic pantomime. *Bolton v. Dep't of Human Servs.,* 540 N.W.2d 523, 525 (Minn.1995). The reason is that, in an employment context, such incidents are part of the everyday work environment. *Id.* at 526. More importantly, the record before us contains no evidence that anyone actually saw

Theisen being escorted out of Covenant's building. Because there was no "publication" of the challenged conduct, there can be no defamation. The assignment of error is without merit.

***D. Remaining issues.*** Theisen also advanced, and the district court summarily but thoughtfully rejected, theories of recovery based on promissory estoppel, breach of contract, and intentional infliction of emotional distress. We have carefully reviewed these claims and, like the district court, find them to be entirely unsupported under the law or the record made on summary judgment. It would unduly lengthen this opinion, while adding nothing to our jurisprudence, to address those issues here. We therefore affirm the court's summary judgment for Covenant in its entirety.

**AFFIRMED.**

SNELL, S.J.,* participates in lieu of STREIT, J., who takes no part.

---

* Senior Judge assigned by order pursuant to Iowa Code section 602.9206 (2001).