# IN THE COURT OF APPEALS OF IOWA

No. 18-1170
Filed May 1, 2019

**SCOTT COOPER,**
        Plaintiff-Appellant,

**vs.**

**CITY OF REINBECK, REINBECK TELECOMMUNICATIONS UTILITY, and TIM JOHNSON, MAYOR OF THE CITY OF REINBECK,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Grundy County, Bradley J. Harris, Judge.

        Scott Cooper appeals the grant of summary judgment dismissing his defamation claim.  **AFFIRMED.**

        David L. Brown and Tyler R. Smith of Hansen, McClintock & Riley, Des Moines, for appellant.

        Dustin T. Zeschke of Swisher & Cohrt, P.L.C., Waterloo, for appellees.

        Heard by Vogel, C.J., and Vaitheswaran and Doyle, JJ.

**VOGEL, Chief Judge.**

Scott Cooper appeals the grant of summary judgment dismissing his defamation claim against defendants City of Reinbeck, Reinbeck Telecommunications Utility (RTU), and Tim Johnson. He argues the defendants are not entitled to absolute or qualified privilege on their allegedly defamatory statements contained in their letter prepared for Cooper's unemployment proceeding and in statements to the RTU board and city council. Because Cooper has not shown a genuine issue of material fact as to whether the defendants acted with actual malice or otherwise abused their immunity under qualified privilege, we affirm the district court's grant of summary judgment.

## I.     Background Facts and Proceedings

Cooper began working for RTU in 2002. Johnson began serving as mayor of Reinbeck in 2014. The RTU board terminated Cooper on May 18, 2015, and Cooper subsequently filed for unemployment benefits. In preparation for the unemployment proceeding, Johnson and RTU chair Dan Smoldt signed a letter, printed on city letterhead and addressed to Iowa Workforce Development (IWD), describing Cooper's conduct as follows:

> During his time as temporary City Clerk, Scott [Cooper] locked out all other employees from access to customer files, locked out all employees from accessing credit card payments, uninstalled software from the server, and bullied [another] employee. This bullying was so bad that the city council had to step in at the end of January 2015 and move Scott's office to the back of city hall to separate him from the other employee. . . .
> When the current administrator took office on April 7, 2014, several instances of Scott's misconduct while acting as City Clerk were discovered. Mainly, $68,284.68 was transferred from the Water Fund to the RTU Fund. . . . This transfer was made without a Resolution or council approval. This is a violation of Iowa State Code 388.10. . . .

In September 2013, a RTU Bond in the amount of $155,000 was issued. The signature on the bond was that of RTU Board Chair, Tom Bickett. Tom has denied ever signing the bond and had stated that it was not his signature. This signature was done by Scott via either a stamp or cutting and pasting a signature from a previous document. . . .

A review of the City finances was . . . presented to the city council, Scott, and RTU Board on May 21, 2014. Some of [the] concerns included a period of time when Scott was acting City Clerk. Those [findings] include: Scott took out a Federal ID number and opened a checking account for RTU with city funds, no Resolution or approval was passed by the council; Scott put RTU revenue in the RTU checking account but [paid] the bills from the city checking account; Scott allowed the RTU Board and employees to receive free cable; Scott did not publish RTU or City Minutes on time; RTU bills were not being published; there were no internal control methods established; shortage of funds available in the RTU account to make the bond payments. . . .

. . . .

On May 12, 2015 at around 2:40 a.m. all telephone service with RTU went down. Scott tried to restore the system himself. There was a RTU Board meeting on Wednesday, May 13, 2015 where Troy DeJoode from IAMU was present. He gave Scott a number to call of a person who could help him get the service up again. On [Thursday], May 14, 2015, Scott and RTU Board Chair, Tom Bickett, were asked if they had contacted the person whom Troy DeJoode requested. They responded that they had not. The Mayor called the number and within two hours Ryan Malek was on site working on fixing the problem. A phone outage that should have lasted a couple of hours lasted 4 days for some customers because proper protocol was not followed. Troy DeJoode reported that IAMU should have been the first number contacted as they are RTU's emergency plan. IAMU was never contacted by RTU. Ryan Malek had to spend a couple hours fixing what Scott botched during his attempts to get the system running.

Other issues the Mayor and council found with the outage included: Scott knew the outage could happen because RTU was operating on a debunk [sic] system for over a year and had no backup or emergency plan; Scott did not communicate with the city on updates or progress of the outage and showed poor customer service, even laughing at the situation at a public meeting, showed no sense of urgency; negligently handled the system. IAMU was at the meeting and advised Scott to call a number of a person that could get the system up again; Cooper lied to the Board about receiving the number from IAMU; Troy DeJoode from IAMU informed the City Attorney that if Cooper did not call the number given to him he is either hiding something or doesn't want the citizens to know his

incompetence. The next morning, Scott and RTU were questioned about calling the number, they had not. The Mayor then called the number.[1]

Johnson also reported directly to the RTU board and city council that Cooper had presumably falsified the signature on the bond documents.[2]

On March 30, 2017, Cooper filed his petition alleging the defendants made libelous and slanderous statements about him. The defendants answered, asserting affirmative defenses, and later moved for summary judgment. On June 8, 2018, the district court issued its order, finding the statements made were either not defamatory or protected under privilege. Cooper now appeals.

## II. Standard of Review

Our review of rulings on motions for summary judgment is for correction of errors at law. Summary judgment is appropriately granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, the record must be viewed in the light most favorable to the nonmoving party.

*Bierman v. Weier*, 826 N.W.2d 436, 443 (Iowa 2013).

## III. Analysis

"The law of defamation is composed of the twin torts of libel and slander." *Barreca v. Nickolas*, 683 N.W.2d 111, 116 (Iowa 2004). "The gist of defamation is the publication of written or oral statements which tend to injure a person's reputation and good name. Generally, the statements must be false and

---

[1] The only documents in the record from the unemployment proceeding are the letter and the decision of the administrative law judge. The decision does not specifically mention the letter or most allegations contained therein, though it does discuss Cooper's role in the telephone-service outage. The decision concluded RTU as the employer did not carry its burden to prove Cooper committed disqualifying misconduct, and it awarded unemployment benefits.

[2] Johnson's statements to the RTU board and city council are not in the record, but in his deposition he acknowledged Cooper's actions were brought before the board and council.

demonstrably about the person claiming to be defamed."[3] *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996). Cooper asserts the defendants defamed him in the letter to IWD and in Johnson's statements to the RTU board and city council regarding Cooper's alleged falsification of the signature on the bond documents.[4]

### A. *Absolute Privilege*

Otherwise defamatory statements are absolutely privileged from liability when those statements are given for use in a judicial proceeding. *See Spencer v. Spencer*, 479 N.W.2d 293, 295 (Iowa 1991). The defendants claim the unemployment proceeding is such a judicial proceeding, and the letter to IWD is therefore absolutely privileged. Our supreme court has previously considered liability for statements given for use in an unemployment proceeding. *See Haldeman v. Total Petroleum, Inc.*, 376 N.W.2d 98, 102–03 (Iowa 1985), *abrogated on other grounds by Barreca*, 683 N.W.2d at 119. However, the court did not reach absolute privilege; instead, the court found total statutory immunity applied to statements given for use in an unemployment proceeding under a

---

[3] "The truth of the statement is an absolute defense" to defamation. *Huegerich*, 547 N.W.2d at 221. In Cooper's deposition, he generally disputed the defendants' version of events and specifically denied falsifying Bickett's signature. Taking the evidence in the light most favorable to Cooper, we cannot say no genuine issue of material fact exists as to the truth of the statements. *See Bierman*, 826 N.W.2d at 443. Furthermore, the district court made no findings as to whether any of the alleged defamatory statements were protected by "the truth." Therefore, summary judgment is not available on the truthfulness of the defendants' statements.

[4] The RTU board and city council also published minutes of their meetings that noted Cooper would receive severance pay "as long as there is no unlawful activity found in the audit." Cooper takes no issue with this publication on appeal, and the district court was correct in finding no provably false statement in the minutes that could cause a recognizable injury. *See Huegrich*, 547 N.W.2d at 221.

specific provision of the Iowa Code.[5]  *See id.*  The provision was subsequently amended to exclude immunity when the statement "is made with malice."[6]  1988 Iowa Acts ch. 1054, § 1.  Accordingly, current Iowa Code section 96.11(6)(b)(2) (2015) may provide statutory immunity from defamation for statements given to the agency for use in unemployment proceedings.  In their arguments to us, the parties do not address statutory immunity under section 96.11(6)(b)(2) and whether it affects the availability of absolute privilege here.  Thus, we do not reach absolute privilege and decide the appeal on qualified privilege below.  *See Tate v. Derifield*, 510 N.W.2d 885, 887 (Iowa 1994) ("On appeal we may affirm the district court ruling on any ground raised in district court . . . .").[7]

### B.  *Qualified Immunity*

A qualified privilege from liability for defamation applies to statements of members of subordinate legislative bodies if those statements are "made in the performance of their official duties 'upon any subject matter pertinent and relevant' to the occasion."  *Barreca*, 683 N.W.2d at 118; *see also Mills v. Denny*, 63 N.W.2d 222, 227 (1954) (stating qualified privilege applies to statements of a mayor).  A defendant may claim qualified privilege by proving: "(1) the statement was made in good faith, (2) the defendant had an interest to uphold, (3) the scope of the

---

[5] The court relied on a provision then located at Iowa Code section 96.11(7)(b)(2) (1983). *See Haldeman*, 376 N.W.2d at 102–03.  This language has since been amended, as explained herein, and renumbered as Iowa Code section 96.11(6)(b)(2) (2015).

[6] The legislature explained the amendment to this provision "qualifies language under Iowa's unemployment compensation law which creates an absolute privilege [under *Haldeman*, 376 N.W.2d 98] against an action for slander or libel."  H.F. 2247, 72d G.A., 2d Sess., explanation (Iowa 1988).

[7] Under Iowa Code section 96.11(6)(b)(2), the letter to IWD is immune from liability for defamation unless the statements therein were "made with malice."  We do not decide whether the letter is immune under section 96.11(6)(b)(2).

statement was limited to the identified interest, and (4) the statement was published on a proper occasion, in a proper manner, and to proper parties only." *Theisen v. Covenant Med. Ctr., Inc.*, 636 N.W.2d 74, 84 (Iowa 2001). However, a defendant may lose the qualified privilege if the plaintiff proves the defendant acted with "actual malice" or otherwise abused the privilege. *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 149 (Iowa 2013). A defendant acts with "actual malice" by making a defamatory statement "with knowing or reckless disregard for whether it was true or false." *Id.* A defendant otherwise abuses the qualified privilege by, for example, excessively publishing the statements or by publishing them "to persons other than those who have a legitimate interest in the subject of the statements." *Id.* (quoting *Theisen*, 636 N.W.2d at 84). "[I]t is generally the district court's responsibility to determine whether a defendant's statement is qualifiedly privileged, and a jury question as to whether the privilege was abused." *Id.*

The parties agree Johnson's statements to the RTU board and city council are qualifiedly privileged. *See id.* We find the letter to IWD is also qualifiedly privileged because it was written by government officials in the performance of their official duties on a qualifying matter—the defense of a claim for unemployment benefits. *See id.* However, Cooper asserts this qualified privilege is lost because the defendants abused it, specifically by acting with "actual malice." *See Barreca*, 683 N.W.2d at 117. To show the "reckless disregard for the truth" required for "actual malice," Cooper must provide "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. . . . [T]he actual malice standard require[s] a high degree of

awareness of . . . probable falsity." *Id.* at 123 (quoting *Caveman Adventures UN, Ltd. v. Press-Citizen Co.*, 633 N.W.2d 757, 762 (Iowa 2001)).

Cooper focuses his defamation claims on statements that he falsified Bickett's signature on the bond documents. In his deposition, Johnson testified he talked to both Bickett and an officer from the bank that issued the bond while researching the possible falsification. Both Bickett and the bank officer denied adding Bickett's signature or authorizing anyone to do so. When Bickett was deposed, he testified the signature—found in two places—was not his. Because Cooper was the only person who would have processed the documents for RTU, Johnson concluded Cooper must have falsified Bickett's signature. At oral arguments, Cooper faulted the defendants for not taking additional steps to investigate the alleged falsification, but he has not provided evidence the defendants entertained serious doubts after investigating their suspicions. In particular, Johnson acknowledged he did not know for certain that Cooper falsified the signature, but his testimony indicates he took multiple steps to investigate and ultimately had no serious doubts of Cooper's culpability. Cooper has also not provided evidence the defendants seriously doubted any other allegations in the letter to IWD. Therefore, Cooper has shown no evidence the defendants acted with actual malice either when they provided the letter to IWD or when Johnson reported his conclusions to the RTU board and city council. *See id.* Furthermore, Cooper has provided no evidence the defendants otherwise abused the qualified privilege, such as by sharing the letter for purposes beyond the unemployment proceeding. *See Jones*, 836 N.W.2d at 149.

With no evidence of actual malice or other abuse of the qualified privilege, no genuine issue of material fact exists as to whether qualified privilege applies to both the letter to IWD and Johnson's actions in reporting his conclusions to the RTU board and city council. Therefore, the district court did not err in granting summary judgment for the defendants.

**AFFIRMED.**