# IN THE COURT OF APPEALS OF IOWA

No. 18-2030
Filed April 15, 2020


**ROBERT GANNON,**
         Plaintiff-Appellant,

**vs.**

**JOHN HALFERTY, JASPER COUNTY SHERIFF, acting in his individual and official capacities, and JASPER COUNTY, IOWA,**
         Defendants-Appellees.
_____


         Appeal from the Iowa District Court for Marion County, Martha L. Mertz,

Judge.


         Plaintiff appeals the district court decision granting summary judgment to

defendants on his claims of defamation and false light invasion of privacy.

**AFFIRMED.**


         Michael Keller of Mike Keller Law, PLLC, Windsor Heights, for appellant.

         Jason C. Palmer and Thomas M. Boes of Bradshaw, Fowler, Proctor &

Fairgrave, P.C., Des Moines, for appellees.


         Heard by Doyle, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

A sheriff conducted an investigation into possible destruction of graves at a Jasper County cemetery. When Robert Gannon, a neighboring landowner, made remarks about the site's alleged neglect at a county meeting, the sheriff responded that Gannon "had his tenant farmers and people come in to do work and actually destroy grave sites." Gannon initiated a suit for defamation and false light against the sheriff in both his individual and official capacities, the Jasper County Attorney, and Jasper County, Iowa. Gannon was defeated by a motion for summary judgment and then appealed. We affirm the grant of summary judgment.

**Factual Background and Procedural History**

Gannon owns property in rural Jasper County abutting a cemetery known as Sams Cemetery.[1] Gannon took an interest in the cemetery beginning approximately in 2011, highlighting his concerns over the cemetery's maintenance to various boards and organizations.

Until 2015, Gannon was unaware who owned the cemetery property. However, through comments made that year by county and state officials, Gannon came to believe he owned the cemetery. An attorney subsequently produced a preliminary abstract reflecting the same in March 2016. Poweshiek Township filed a quiet title action, the appeal of which is still pending.[2] In 2016, the cemetery gained the designation of "pioneer cemetery" pursuant to Iowa Code sections

---

[1] The record leaves unclear whether an apostrophe is properly included in the cemetery's name. Because "Sams" is a surname of several of the interred, we follow the convention of plaintiff's petition and omit the apostrophe.

[2] In January 2018, the district court ruled in favor of Poweshiek Township, quieting title to Sams Cemetery in favor of Poweshiek Township. EQCV120035 (Jasper).

523I.316 and 523I.102 (2016). Under both the title opinion and the designation as a pioneer cemetery, Poweshiek Township was responsible for the upkeep and maintenance of the cemetery.

Following receipt of the title opinion, Gannon made numerous controversial modifications to the cemetery grounds. Gannon believed his actions enhanced the cemetery and honored those buried within the cemetery, while his critics argued the modifications disrupted a historical and serene site. Actions taken by Gannon or executed at his direction included: installation of a new tombstone for a civil war veteran; installation of a flag pole and angel statue; installation of a commemorative monument; trash removal; perimeter fence removal; straightening of old tombstones; adding dirt fill to sunken graves; spraying and tilling unmowed prairie; installation of wind chime sets; and, most controversially, moving and in some cases unearthing tombstones. The parties fiercely debate the significance of this final action.

In April 2016, Jasper County Attorney Michael Jacobsen called Jasper County Sheriff John Halferty to advise him of a complaint of possible defacing and destruction of property at Sams Cemetery. Sheriff Halferty visited the cemetery to investigate and interviewed contractors who had recently performed work on the cemetery grounds at Gannon's direction.

On June 7, 2016, the Jasper County Board of Supervisors met, with Gannon allotted time on the agenda to raise his concerns regarding Sams Cemetery. At this meeting, Gannon was critical of the county. He alleged that Sheriff Halferty trespassed on his land, the township trustees failed to adequately maintain the cemetery, and the township trustees had illegally sold burial plots on the land,

which he now believed he owned. After giving his remarks, Gannon left. Sheriff Halferty then made the following statement, in which he used the phrase "actually destroy grave sites" to characterize the actions of Gannon and the contractors he hired:

> For the record, if [Gannon] is so concerned about the cemetery upkeep, our investigation has shown that he has actually staked out where he thought the cemetery was. He has then had his tenant farmers and people come in to do work and actually destroy grave sites. And we know that because Mr. Gannon took a video himself, posted it on YouTube in 2015. We were able to compare that video with what has been done now. That information has been turned over to Mr. Jacobsen. I have taken additional complaints about harassment and work. Harassing the people that are taking care of the cemetery and work that he has had done which he just admitted. I'm a little confused because he said it's his property but it's not his property. I'm a little confused 'cause he says you can go on my property but you can't trespass. I'm gonna respectfully notify the Board I will not charge anybody who goes on Sams Cemetery property to visit grave sites. It is a beautiful property but I can tell you one corner of the property has been permanently destroyed; native prairie grass and some headstones that Mr. Gannon authorized. So, I'm a little unsure what his complaint is. He's done the most damage.
>
> I will take [a] report from [Gannon] today but I am going to refer that information to Mr. Jacobsen for a legal determination on who actually has the right . . . to sell grave sites or whatever the proper term is. I don't normally talk about that, but . . . he's made threats of legal liability and other things. And I am just telling you we are going to try work with him, but I'm not really sure where he is coming from. So I have pictures, too. If anybody would like to go out and look at what's been done at the cemetery I would really encourage you guys to do that. Thank you, unless you have questions.

A representative from the Newton Daily News was present during Halferty's statement, and the paper quoted Halferty's statement in part the following day:

> "For the record, if he is so concerned about the cemetery upkeep, our investigation has shown that he has actually staked out where he thought the cemetery was. He has then had his tenant farmers and people come in to do work and actually destroyed grave sites. We know that because Mr. Gannon took a video himself last year

and we were able to compare that video with what has been done now," Halferty said. "I am a little unsure what his complaint is, he has done the most damage."

Gannon then sued Sheriff Halferty, Jasper County, and Jasper County Attorney Michael Jacobsen for defamation, false light invasion of privacy, and conspiracy. Defendants motioned for summary judgment in January 2018, which the trial court later granted as to all three claims. Plaintiff and defendants motioned to amend and enlarge, and defendants motioned to strike the plaintiff's June 25 attempt to supplement the record after the summary judgment order entered. The court granted the motion to strike and affirmed its ruling on the motion for summary judgment. Plaintiff timely appealed.[3]

**Standard and Scope of Review**

We review a district court's decision granting summary judgment for corrections of errors of law. *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 139 (Iowa 2013).

> A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the record reveals a conflict only concerns the legal consequences of undisputed facts. When reviewing a court's decision to grant summary judgment, we examine the record in the light most favorable to the nonmoving party and we draw all legitimate inferences the evidence bears in order to establish the existence of questions of fact.

---

[3] On February 21, 2019, plaintiff voluntarily dismissed his appeal against defendant Michael Jacobsen, Jasper County Attorney, in both his individual and official capacities. We therefore only consider Gannon's claims against Sheriff Halferty. Because we affirm the district court's grant of summary judgment, we have no occasion to address the applicability of the Iowa Municipal Tort Claims Act, as the failure of Gannon's claim against Sheriff Halferty is fatal to his claim against Jasper County.

*Id.* at 139–40 (quoting *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 96–97 (Iowa 2012)).  "Even if the facts are undisputed, summary judgment is not proper if reasonable minds could draw different inferences from them and thereby reach different conclusions."  *Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019).

A district court's ruling on a motion for a continuance under Iowa Rule of Civil Procedure 1.981(6) is reviewed for abuse of discretion.  *Good v. Tyson Foods, Inc.*, 756 N.W.2d 42, 46 (Iowa Ct. App. 2008).

**Discussion**

Gannon challenges the district court's grant of summary judgment on his defamation and false light claims against Sheriff Halferty.  We must therefore determine whether the district court correctly found no genuine issue of material fact with regard to either Gannon's claims or Sheriff Halferty's affirmative defenses.  *See C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 79–80 (Iowa 2011) (finding a genuine issue of material fact existed as to an element of an affirmative defense).  In brief, we find that Sheriff Halferty's statements were substantially true and were protected by qualified privilege.  Thus, the grant of summary judgment was proper.

To prevail on claims of false light invasion of privacy and defamation, a plaintiff must prove falsity.  *Bierman v. Weier*, 826 N.W.2d 436, 465 (Iowa 2013); *Yates v. Iowa West Racing Ass'n*, 721 N.W.2d 762, 768 (Iowa 2006).  Thus, Gannon must prove it was false for Sheriff Halferty to state that Gannon "had his tenant farmers and people come in to do work and actually destroy grave sites." The truth or falsity of that statement also bears on defendants' affirmative defenses

of truth, statement of opinion, and qualified privilege. *See Yates*, 721 N.W.2d at 769–70, 772–73; *Barreca v. Nickolas*, 683 N.W.2d 111, 118 (Iowa 2004). While the parties agree that Gannon conducted a variety of activities at Sams Cemetery, including digging and tilling, the parties disagree as to whether Gannon actually destroyed grave sites.

Sheriff Halferty cites two locations as evidence that Gannon's actions caused the destruction of grave sites. The first is located in the northeast corner of Sams Cemetery and the second on the cemetery's west side.

Present at the northeastern site was a tombstone and base, both of which protruded from the ground while remaining partially buried in dirt. Gannon initially believed the northeastern site was a grave, referring to such as a "mystery grave," so he arranged for a visit by the Bioarcheology Director of the Office of the State Archeologist, who recommended using ground-penetrating radar to search for interred remains. The Director also mentioned the possibility of using a prod to search the spot. Gannon then excavated at least one foot of dirt and used a prod on the site. After he failed to identify remains at the site, Gannon alone concluded there were none. He subsequently removed the grave marker found at this location, which was somewhat apart from the other tombstones in the cemetery.

The western site lies approximately fifty feet west of the then-current grass line of the cemetery. In this area, Gannon had enlisted a contractor to clear a grove of trees the year prior to Sheriff Halferty's investigation. During the investigation, Sheriff Halferty found pieces of stone he determined to be remnants of a grave marker. He also found a nearby indentation he believed to be the former site of the stones.

If an allegedly defamatory statement is substantially true, the substantial truth of the statement is a complete defense against the defamation action. *Wilson v. IBP, Inc.*, 558 N.W.2d 132, 140 (Iowa 1996). Literal truth is no longer required. Instead, a defendant gains the protection of the substantial truth defense when "the 'sting' or 'gist' of the defamatory charge is substantially true." *Id.*

Gannon's actions severely affected the character of this small cemetery. He removed the perimeter fence, tilled land and planted crop, mowed a prairie remnant, and relocated a number of tombstones. Some of the relocated tombstones were duplicates that were discarded and replaced following a vandalism incident. The stone at the northeastern site was unrelated to that incident and so much resembled a gravesite that Gannon had a state official come out to investigate. These major modifications came in the wake of Gannon's removal of an immediately adjacent tree grove on his property, disturbing the western gravesite. Gannon's sister reported his actions "totally changed the serene landscape that once was present," describing the modifications as a "violation of reverence."

Gannon's defamation and false light claims focus on Sheriff Halferty's statement that Gannon or his agents "actually destroyed grave sites." In light of the sum of Gannon's actions and his actions at the northeastern site in particular, we find the "sting" or "gist" of Sheriff Halferty's statements to be substantially true. At the Board of Supervisors meeting, Sheriff Halferty said an investigation had shown destruction of grave sites. This is substantially true. The evidence also demonstrates that Gannon made sufficient modifications so as to change the natural character of the site as a whole.

Furthermore, Gannon admitted to probing the earth at a site he initially identified as a gravesite, later going so far as to remove the headstone entirely from its resting place. That Gannon enlisted the Bioarcheology Director of the Office of the State Archeologist to evaluate the northeastern site only serves to underscore his initial perception of the site as a likely gravesite. All parties agree the stone present at the northeastern site was at one point a grave marker, and by moving the partially interred grave marker from its resting location, Gannon destroyed that gravesite, even if the site was a second or subsequent home for the marker.

Supporting the conclusion that Sheriff Halferty's statement was substantially true is the legislature's decision to equate the disturbing of gravesites with the destruction of gravesites for purposes of criminal sanctions. *See* Iowa Code § 523I.316(2) ("A person who knowingly and without authorization damages, defaces, *destroys, or otherwise disturbs* an interment space commits criminal mischief in the third degree." (emphasis added)). Multiple deponents in this case felt Gannon had disturbed the cemetery, and the legislature's equivalence leads to the conclusion that Gannon would suffer the same amount of injured reputation irrespective of any distinction between disturbing and destroying the sites.

On appeal, Gannon maintains a narrow focus. He centers his false light and defamation claims on Sheriff Halferty's comment that gravesites were "actually destroyed," arguing that no removed tombstone was taken from its purposeful site and any dirt removed or disturbed was not home to a burial. We think this analysis is not in accord with the "gist" and "sting" analysis as expounded in Iowa cases on the substantial truth. *See Wilson*, 558 N.W.2d at 140–41 (citing *Behr v. Meredith*

*Corp.*, 414 N.W.2d 339, 342 (Iowa 1987)). Given Gannon's substantial actions at the cemetery, which included the removal of a headstone from a site that appeared at first to be an interment space, Sheriff Halferty's comment that Gannon and his agents "actually destroyed" gravesites was substantially true. We therefore find that summary judgment was proper on the ground of substantial truth.

Though the district court granted summary judgment solely based on the defendants' substantial truth defense, we also find that Sheriff Halferty established the elements of the affirmative defense of qualified privilege.

To prove a statement is protected by qualified privilege, a defendant must show: (1) the statement was made in good faith, (2) the defendant had an interest to uphold, (3) the scope of the statement was limited to the identified interest, and (4) the statement was published on a proper occasion, in a proper manner, and to proper parties only. *Jones*, 836 N.W.2d at 149 (quoting *Theisen v. Covenant Med. Ctr., Inc.*, 636 N.W.2d 74, 84 (Iowa 2001)). The privilege may be lost "if the speaker acts with actual malice, or exceeds or abuses the privilege through, for example, excessive publication or through publication to persons other than those who have a legitimate interest in the subject of the statements." *Theisen*, 636 N.W.2d at 84. In this context, "actual malice" means the defendant "published the statement with a knowing or reckless disregard of its truth." *Barreca*, 683 N.W.2d at 121–23.

An evaluation of the four-factor test leads to the conclusion that Sheriff Halferty's statement is protected by qualified privilege. First, his statement was made in good faith. He had personally observed two sites where grave markers had been disturbed from their resting places at apparent grave sites. Additionally,

his statement was based upon observations stemming from his investigation of the cemetery, and Iowa cases have found thorough investigations to be indicative of good faith. *See Theisen*, 636 N.W.2d at 84; *Jones*, 836 N.W.2d at 150–51 (finding no jury question on the issue of qualified privilege where an investigatory report did not exceed its mandate).

Sheriff Halferty's statement upheld the appropriate interest of faith in Jasper County governmental institutions and representatives. Sheriff Halferty sought to provide a counter narrative against Gannon's incendiary comments, which included accusations of illegal burial plot sales, fraudulent deeding, and trespass. His comment that Gannon or his agents "actually destroyed gravesites" was based on an investigation he had conducted in his official capacity, through which he made the reasonable conclusion that the western and northeastern sites at Sams Cemetery were home to disturbed gravesites and such information was shared with those who had heard Gannon's allegations.

Finally, Sheriff Halferty's statement was uttered to the same group to which Gannon had directed his comments. The scope and audience of Sheriff Halferty's statement were thus proportionate to that of Gannon's statement. While the statement was made at a public hearing, this fact does not change our analysis. For instance, in *Cowman v. LaVine*, 234 N.W.2d 114, 125 (Iowa 1975), the Iowa Supreme Court found statements made by a city councilman at a public meeting of the city council to be qualifiedly privileged. Because Sheriff Halferty's statement was made in the same venue on the same subject as Gannon's comments, his statement was published in a proper manner, on a proper occasion, and to proper parties.

We conclude there was no "knowing or reckless disregard for the truth" here. *See Barreca*, 683 N.W.2d at 123. Thus, Sheriff Halferty's defense of qualified privilege protects his statement, and we affirm summary judgment on this affirmative defense in addition to substantial truth.

Gannon also argues the district court abused its discretion when it denied his motion to continue for discovery. We find no abuse of discretion. The court had previously granted a motion to continue at Gannon's request. The court's ruling denying Gannon's second continuance motion was without prejudice, leaving open the possibility of further discovery if needed. However, further discovery was not needed as to the issue of substantial truth, the sole ground upon which the court granted summary judgment. Ample uncontested facts in the record support the conclusion that Sheriff Halferty's statement was substantially true. Of the requests in Gannon's continuance motion, only the opportunity to search the northeastern site with ground-penetrating radar is relevant and material to the affirmative defense of substantial truth. Yet because ample uncontested facts demonstrate the substantial truth of Sheriff Halferty's statement, as discussed above, it was not an abuse of discretion to deny Gannon's motion despite his request to use ground-penetrating radar to search for remains.

**Conclusion**

Because we find Sheriff Halferty's statement at the Board of Supervisors meeting to be substantially true and qualifiedly privileged, we affirm the district court's grant of summary judgment.

**AFFIRMED.**